[No. 46732.    En Banc.    July 3, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. MACK HARRIS THOMPSON, *Petitioner.*

*David Middaugh,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Lee Ann Miller* and *J. Robin Hunt, Deputies,* for respondent.

UTTER, C.J.—We granted review of the Court of Appeals opinion, *State v. Thompson,* 24 Wn. App. 321, 601 P.2d 1284 (1979), to determine whether the detention of petitioner Mack Harris Thompson for identification and a warrant check conformed to the requirements of the Fourth Amendment. The stop violated the Fourth Amendment because a constitutionally adequate justification for the stop did not exist, and we reverse the conviction.

The facts are essentially undisputed. While patrolling on Interstate 5 about noon on April 22, 1977, a State Patrol trooper received a radio report that an occupant of a northbound Cadillac was waving a handgun. Shortly thereafter, the trooper saw a car fitting the description exiting at Southcenter shopping complex. He testified that he followed the Cadillac as it "meandered" in the parking lot and stopped next to a green Chrysler, which was parked in a spot "somewhat isolated" from other vehicles.

The trooper parked in front of the Cadillac and ordered the occupants out of the car. At about this same time, he testified, petitioner, who was driving the Chrysler, got out

of his car and started to walk "rapidly" toward South-center. The trooper ordered him not to leave. It is unclear whether Thompson again attempted to leave, but the trooper told him that he was not free to go.

Another unit soon arrived and one of the officers asked petitioner to identify himself. This information was radioed to headquarters, and the officers learned that Thompson was wanted on a $39 traffic warrant. Thompson was then placed under arrest and searched. Because contraband was found, the officers impounded the car, and they discovered more contraband during an inventory search.

Thompson was charged with possession of heroin in violation of the Uniform Controlled Substances Act, RCW 69.50.401(c). Prior to trial, he moved to suppress the contraband seized during the police investigation. The motion was denied, and a court sitting without a jury found petitioner guilty as charged. Thompson appealed on several grounds, including a challenge to the lawfulness of the initial detention. The Court of Appeals affirmed the conviction by a 2-to-1 vote. Thompson then petitioned for review in this court, raising solely the issue concerning the initial detention. We granted review on this issue. *State v. Thompson*, 93 Wn.2d 1009 (1980).

All seizures of the person, even those involving only brief detentions, must be tested against the Fourth Amendment guaranty of freedom from unreasonable searches and seizures. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *Terry v. Ohio*, 392 U.S. 1, 17, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). To conduct a full arrest of an individual, the officer must have probable cause to believe that an offense has been or is being committed. *E.g., Brinegar v. United States*, 338 U.S. 160, 175–76, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949). An investigatory stop short of an arrest may be made on less than probable cause. *Terry v. Ohio, supra.* An officer making such an investigatory stop, however, is required by the Fourth Amendment to have a reasonable suspicion, based on objective facts, that the individual is

involved in criminal conduct. *Brown v. Texas,* 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *see Terry,* at 21–22.

There is no question in this case that petitioner had been "seized": the State Patrol trooper told him he was not free to leave. *See Terry,* at 16. We have held a person is under arrest from the moment the person was not, and knew he or she was not, free to go. *State v. Byers,* 88 Wn.2d 1, 6, 559 P.2d 1334 (1977); *cf. Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979). A question exists after examining the facts of this case whether the detention here was a full arrest or merely an investigatory stop. This question need not be resolved because even the lesser standard for a stop, short of an arrest, was not met.

To justify an investigatory stop, the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts," "would 'warrant a man of reasonable caution in the belief' that the action taken was appropriate". *Terry,* at 21, 22. The specific facts which the State cites to justify the seizure in this case are the brandishing of a pistol, the driver of the implicated Cadillac pulling up next to petitioner's car in an isolated part of the lot, and the petitioner's "hurried" walking away "without even looking back." These facts do not create a reasonable suspicion that petitioner was involved in criminal conduct.

■ Since, as the radio report stated, the pistol was brandished solely by the occupants of the Cadillac and not by Thompson, this fact is irrelevant to any suspicion that Thompson had been involved in criminal activity. The Fourth Amendment requires that the suspicion be individualized, *Brown,* at 51. Petitioner's mere proximity to others independently suspected of criminal activity does not justify the stop. *See Ybarra v. Illinois,* 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979); *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). Neither can we find that Thompson's rapid walking toward the shopping center, by itself,

made him a proper subject for criminal investigation. *See Larson,* at 645.

The State does not contend that the officers suspected Thompson of any specific misconduct, and points to no other circumstances which would raise a reasonable suspicion of criminal conduct.

The State Patrol officer's testimony at the suppression hearing illustrates that the necessary objective basis for the stop was not present. In response to the defense attorney's question as to why he stopped Thompson, he stated:

All that I can say is that I had a suspicious circumstance. Call it instinct or whatever. Something told me that I should keep this gentleman long enough to I.D. him. At that time things happened very quickly. And I'm really not totally sure what went through my mind. It's just that I was—I think an instinct is a fair statement.

The suppression hearing judge found this "instinct" formed a reasonable ground for the stop and that the lack of a specific reason was not determinative. However, this "inarticulate hunch", *Terry,* at 22, is precisely the type of subjective basis which is constitutionally insufficient, because it creates a risk that a person may be detained "solely at the unfettered discretion of officers in the field." *Brown,* at 51.

In *Brown v. Texas, supra,* two officers cruising in a patrol car observed appellant Brown and another man walking away from each other in an alley in an area of El Paso noted for a high incidence of drug traffic. One officer testified that the two had been together or about to leave when the patrol car approached. He further testified that "the situation looked suspicious and we had never seen that subject in that area before." As in this case, the officers did not claim to suspect Brown of any specific misconduct.

One officer asked Brown to identify himself and explain what he was doing in the area. Brown refused and the officer arrested him for violation of a provision of the Texas penal code which makes it a crime to refuse to comply with a police officer's request for identification. The United

States Supreme Court held that none of the facts known to the officers warranted a reasonable suspicion that Brown was involved in criminal conduct. Holding the stop illegal, the court noted that

> In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference.

*Brown,* at 52.

There is an understandable desire by police officers to investigate what appear to be suspicious circumstances. Those investigations, however, must comport with Fourth Amendment protections. Otherwise, when a stop is not based on specifically articulated facts, "the risk of arbitrary and abusive police practices exceeds tolerable limits." *Brown,* at 52.

The initial detention of Thompson violated the Fourth Amendment because the officers lacked a reasonable suspicion, based on objective criteria, to believe that appellant was involved in criminal conduct. The conviction is reversed and the case is remanded to the trial court.

ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and FARIS, J. Pro Tem., concur.

Reconsideration denied September 30, 1980.