[Nos. 15180-1-I; 15711-6-I; Division One. February 29, 1988.]
15949-6-I.

THE STATE OF WASHINGTON, *Respondent,* v. JOHN PAUL WILLIAMS, SR., ET AL, *Appellants.*

*Mark W. Muenster* and *Neil M. Fox* of *Washington Appellate Defender Association,* for appellants.

*David S. McEachran, Prosecuting Attorney,* and *MacDuffie Setter, Deputy,* for respondent.

GROSSE, J.—In these consolidated cases on appeal, the appellants contest the trial court's denial of a motion to suppress their confessions.

In the early morning hours of May 27, 1984, the Whatcom County Sheriff's Office received an anonymous call reporting an accident involving motorcycles falling off a trailer attached to a white van. The van was additionally described as having a large picture window on the driver's side. Two officers responded in separate vehicles. Upon arriving at the reported accident scene, one officer observed debris, including glass and wooden boards, in the road but did not see any vehicles or people. The officer then drove eastbound from the accident site and after traveling

approximately 2 miles came upon a van matching the description given by the caller. He stopped the van, requested identification from the driver, and asked the driver, Williams, if he had been involved in an accident. Williams responded "yes" and described what had happened. During this conversation, the officer ran a warrant check on Williams which revealed an outstanding warrant. He arrested Williams on this warrant. Williams then gave the officer his address on Goodwin Road in order to permit the officer to help the passenger in the van (Sharpe) find the courthouse from Williams' residence to which he had to return to obtain sufficient funds in order to post bail for Williams. The van was released to the passenger and Williams was taken to the county jail.

Meanwhile, the second officer had returned to the scene of the accident to investigate further. He found the motorcycles and became suspicious as they were all of the same make and appeared to be brand new. The officer checked a nearby motorcycle dealership and found that it had been burglarized and that motorcycles, keys, and other equipment were missing. This information was relayed to the arresting officer at the county jail who then read Williams his rights and asked him about the stolen motorcycles. According to this officer, Williams orally confessed to the burglary and identified Jay Sharpe as an accomplice.

Two other officers drove to the Goodwin address to investigate. The officers met and questioned Jay Sharpe, James Helder, and Jennifer Williams, wife of appellant John Williams. All were advised of their rights and all made written confessions.

Appellants moved to suppress their confessions; the court denied the motion holding the confessions to be voluntary and admissible. Trials by stipulation for each appellant were held and each was found guilty. On appeal, appellants argue that their confessions were obtained as a direct result of an unlawful stop of the van and should be suppressed as fruits of that illegal stop. John Williams further argues that the Whatcom County Sheriff's informal practice of running

warrant checks in the course of otherwise routine encounters is unconstitutional because it allows the officers unfettered discretion on when to run checks.

█ The threshold question is whether or not the stop of the van was constitutionally valid. The law with respect to investigatory stops is well settled and will not be restated here except as necessary to resolution of the issues presented. Unquestionably, the van and its occupants were "seized" for purposes of constitutional analysis when the investigating officer stopped the van and requested identification and information from the driver. *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980). The issue is whether or not the officer had reasonable grounds to suspect that the van or its occupants were involved in criminal activity. *State v. Kennedy,* 107 Wn.2d 1, 726 P.2d 445 (1986). In short, did the facts in his possession regarding the accident provide any basis to suspect a crime had been committed? We hold that they did.

The stop was made for the purpose of investigating an accident that possibly involved another vehicle or property. RCW 46.52.010 makes it a misdemeanor for the operator of a motor vehicle involved in a collision resulting in damage to an unattended vehicle or to property adjacent to a public highway to fail to stop and to take reasonable steps to locate the owner or to leave a written notice in a conspicuous place identifying himself as the owner or operator of the vehicle involved. RCW 10.31.100(3) authorizes a law enforcement officer to arrest on probable cause without a warrant any person who has committed a violation of RCW 46.52.010. Moreover, the offense need not be committed in the officer's presence as is the case with most misdemeanor offenses. Negligent driving (RCW 46.61.525) is another offense subject to this exception and relevant to the case at bar. In *Waid v. Department of Licensing,* 43 Wn. App. 32, 714 P.2d 681 (1986), this court upheld the validity of an arrest for driving while intoxicated where the officer acted on a radio report of a citizen complaint of erratic driving, despite the fact that the arresting officer did not himself

witness the erratic driving. In the case sub judice, the officer stopping the van certainly had reasonable grounds to suspect that one or all of the above mentioned misdemeanors had been committed. The stop of the van to further investigate was justified. *Cf. State v. Mercer,* 45 Wn. App. 769, 727 P.2d 676 (1986) (if the results of the stop do not dispel the officer's suspicion of criminal activity, he may further detain and continue his investigation).

The next question raised is whether the warrant check in the course of the investigatory stop improperly extended the scope of the intrusion. It did not.

█ Warrant checks for outstanding warrants during valid criminal investigatory stops have been approved as reasonable routine police procedures. *See, e.g., State v. Kerens,* 9 Wn. App. 449, 513 P.2d 63 (1973) (warrant check during stop for hitchhiking, a misdemeanor); *State v. Thompson,* 24 Wn. App. 321, 601 P.2d 1284 (1979) (warrant check during investigatory stop; conviction reversed on insufficient grounds to support reasonable suspicion to stop defendant), *rev'd on other grounds,* 93 Wn.2d 838, 613 P.2d 525 (1980). So long as the duration of the warrant check does not unreasonably extend the initially valid contact, we believe that the purpose behind warrant checks supports their use.[1] The warrant check was conducted during the time the officer was lawfully questioning Williams about the accident. At most, the warrant check took 2 to 3 minutes. The scope of the detention was reasonable and Williams' subsequent confession lawfully obtained.

It follows that Sharpe's and Ms. Williams' confessions were also admissible. The police had information about the burglary of the motorcycle dealership, Williams' lawful confession to the burglary identifying and implicating

---

[1]We are not deciding the issue of the validity of warrant checks outside of situations wherein the officer has reasonable suspicion to stop the driver for traffic infractions occurring in the officer's presence or other crimes occurring in or out of the officer's presence as defined in RCW 10.31.100.

Sharpe, and Sharpe's physical description. The officer lawfully obtained the Goodwin Road address through conversation with Williams regarding directions for Sharpe to drive to the courthouse to post bail.[2] This was enough information to support probable cause to arrest Sharpe and certainly enough to warrant further investigation. After receiving *Miranda* warnings Sharpe confessed to the burglary and several other crimes.

The two officers who drove to the Goodwin address observed a woman inside the white van. Because of her proximity to the van, the police suspected the woman might have knowledge about the burglary. Based upon cumulative information, *State v. Maesse,* 29 Wn. App. 642, 629 P.2d 1349 (1981), the police had reasonable suspicion sufficient to warrant questioning her. After receiving *Miranda* warnings, Ms. Williams voluntarily made a statement.[3] In sum, each appellant's confession was admissible. We affirm.

SWANSON and PEKELIS, JJ., concur.

---

[2] In obtaining the address from Williams, the officer was not "interrogating" him. *See Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980); *State v. Pierce,* 94 Wn.2d 345, 618 P.2d 62 (1980); *State v. McIntyre,* 39 Wn. App. 1, 691 P.2d 587 (1984).

[3] There was conflicting evidence as to whether she waived her rights prior to giving her statement, however, the court made a credibility determination and chose to believe the officer's version of the facts as to the reading and waiver of rights.