[No. 20473-4-I. Division One. July 25, 1988.]

THE STATE OF WASHINGTON, *Appellant,* v. STEVEN JOHN ELLWOOD, *Respondent.*

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Andrea Dahl, Deputies,* for appellant.

*Julie A. Kesler* of *Washington Appellate Defender Association,* for respondent.

PEKELIS, J.—The State of Washington appeals the trial court's order suppressing evidence obtained from a search incident to the arrest of Steven Ellwood. We affirm.

## I

On October 7, 1986, at around midnight, Detective William Deckard was patrolling in his car when he noticed the defendant, Steven Ellwood, and a companion near an alley in an area of Everett with a history of burglaries and assaults. Detective Deckard testified that even though he observed nothing suspicious about the pair, he intended to detain them to conduct a field interview or to call backup units in the event that they continued walking. After stopping his car, Detective Deckard walked up to the two young men, flashlight in hand, and asked them what they were doing in the area.[1] Because he felt their answers were

---

[1]Ellwood, on the other hand, testified that Detective Deckard pulled in front of them and said: "Hey, guys, you know, come over here and let's see some identification." However, the trial court resolved the conflict in favor of the State, entering a specific finding that Detective Deckard merely asked what the young men were doing in the area. This court will uphold the trial court's credibility findings after a suppression hearing where, as here, they are supported by substantial evidence. *State v. Tocki,* 32 Wn. App. 457, 463, 648 P.2d 99, *review denied,* 98 Wn.2d 1004 (1982).

unsatisfactory,[2] he asked them for their names and dates of birth, which they gave to him verbally. Deckard then told the two to "[w]ait right here" while he went to his patrol car to conduct a warrant check. Upon hearing of an outstanding warrant for Ellwood, Detective Deckard arrested him and, in the course of a search, discovered cocaine and a measuring scale.

One the basis of the evidence presented, the trial court concluded, *inter alia*:

. . .

2. That Deckard's investigatory stop of Ellwood was not supported by articulable and objective facts that would have reasonably caused the officer to believe that either Ellwood or the other person were involved in, had been involved in, or were about to be involved in any criminal activity.

3. That the stop was made merely because Deckard had observed Ellwood in what is known as a high crime area.

4. That under all the circumstances, a reasonable person in the position of Ellwood would not have felt free to leave when Deckard first approached Ellwood and made the statement that caused Ellwood to stop.

5. That under the circumstances, a reasonable person in Ellwood's position would not have felt free to leave throughout the duration of the investigatory stop.

6. That the investigatory stop of Ellwood constituted a "seizure" under both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Washington Constitution.

. . .

8. That the evidence sought to be suppressed was discovered as a direct result of the illegal seizure of the defendant.

## II

The State contends that the trial court erred in concluding that a seizure occurred when Detective Deckard initially

---

[2]When the young men explained they were going to meet a friend at a restaurant, Detective Deckard was unsatisfied with their explanation because he believed the restaurant was closed.

approached Ellwood, arguing that a police officer's request for identification is not a "seizure" activating Fourth Amendment safeguards. While merely requesting identification, without more, does not constitute a seizure under the Fourth Amendment, *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985) (citing *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 216, 80 L. Ed. 2d 247, 104 S. Ct. 1758 (1984)), a seizure does occur when the circumstances surrounding the encounter demonstrate that a reasonable person would believe he was not free to leave. *Delgado,* 466 U.S. at 216; *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). Whether a reasonable person would believe he was detained depends on the particular, objective facts surrounding the encounter. *See Mendenhall,* 446 U.S. at 554.

In determining that the initial stop of Ellwood and his companion was such that "a reasonable person in the position of Ellwood would not have felt free to leave", the trial court may well have been influenced by certain matters which only it, as the trier of fact, could observe. However, as a general rule, the approach of a uniformed officer carrying a gun is not in itself a sufficient show of force to instill in one the reasonable belief that he is being detained. *State v. Belanger,* 36 Wn. App. 818, 820, 677 P.2d 781 (1984); *Mendenhall,* 446 U.S. at 554. Here, the trial court's findings do not articulate *any* specific *objective* facts other than Detective Deckard's uniformed presence to support its conclusion that the initial stop constituted an illegal detention. Furthermore, the trial court seems to rely on the testimony of Detective Deckard that he would have detained Ellwood had he attempted to walk away. Detective Deckard's unexpressed subjective intent is immaterial on the issue of whether a reasonable person would feel free to leave. *See Mendenhall,* 446 U.S. at 554 n.6.

▮ Nevertheless, a seizure did occur, as the State concedes, when Detective Deckard told Ellwood and his companion to "[w]ait right here". At this point Ellwood and his companion were not free to leave. Such a detention, which

is short of a full–blown arrest, is permissible only where police officers can point to specific and articulable facts that indicate that someone has committed or is committing a crime. *Terry v. Ohio,* 392 U.S. 1, 21–22, 30, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

The State admits that Detective Deckard could not point to any articulable and objective facts that would have reasonably caused him to believe that either Ellwood or his companion was involved in criminal activity. As the trial court found, Detective Deckard decided to detain Ellwood merely because of the late hour and Ellwood's presence in an area with a history of burglaries and assaults. These reasons do not meet the minimal constitutional requirement that a police officer have a reasonable suspicion founded on specific and articulable facts before detaining a person. *Terry,* 392 U.S. at 21–22. Thus, Ellwood's detention was illegal.

## III

The State contends, however, that Ellwood's name was obtained before the illegal detention as a result of Detective Deckard's *lawful* request for identification. Thus, the State argues, the cocaine and measuring scale subsequently seized during Ellwood's arrest were not tainted by his illegal detention.

█ It was not simply Ellwood's *name,* however, but his *coerced continued presence* at the scene, that led to the seizure of the cocaine and measuring scale. Officer Deckard was able to seize the cocaine and measuring scale during the course of Ellwood's arrest only because he had improperly detained Ellwood. One can only speculate as to whether Ellwood would still have had the drugs in his possession had Detective Deckard allowed him to leave, and then, upon learning of the outstanding warrant, found and arrested him. If so, Detective Deckard could legally have seized the evidence as incident to the arrest. Here, instead, the connection between Detective Deckard's illegal seizure of Ellwood and the seizure of the cocaine and measuring

scale was not sufficiently attenuated to dissipate the taint. *Cf. State v. Rothenberger,* 73 Wn.2d 596, 600–01, 440 P.2d 184 (1968). Thus, the evidence gathered as a result of Ellwood's illegal detention is inadmissible.

Affirmed.

GROSSE and WINSOR, JJ., concur.

Reconsideration denied August 29, 1988.