[No. 10607-1-III.   Division Three.   April 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. LUCIO P. MADRIGAL, *Appellant*.

Timothy M. Greene, for appellant.

Jeffrey C. Sullivan, Prosecuting Attorney, and Kenneth L. Ramm, Deputy, for respondent.

SWEENEY, J. — Lucio P. Madrigal was found guilty of possession of cocaine. He appeals contending the State's evidence should have been suppressed because the police officer did not have an articulable reasonable suspicion of criminal activity necessary to justify an investigatory stop. We affirm.

## FACTS

Yakima Police Officer Rodney Light was on routine patrol at approximately 6 p.m. on November 19, 1989. A few hundred feet from the Yakima County Courthouse, he observed a "heated argument" between a man, later identified as Mr. Madrigal, and a woman, known to Officer Light as Tia Williamson. He heard the couple yelling more than half a block away. Officer Light concluded Mr. Madrigal's body language was overpowering Ms. Williamson. Believing an assault was about to occur or had occurred or that a domestic quarrel was ensuing, Officer Light stopped his patrol vehicle and approached the couple. Ms. Williamson was crying. The couple continued to yell at each other. Officer Light asked Ms. Williamson if there was a problem. She said no. Officer Light asked Mr. Madrigal for identification and told Ms. Williamson she was free to go. Mr. Madrigal handed over his Washington ID card. Officer Light ran a

warrant check using a portable radio while he stood with Mr. Madrigal. Within 2 minutes, Officer Light was informed of three outstanding misdemeanor warrants for Mr. Madrigal's arrest.

Officer Light advised Mr. Madrigal he was under arrest, handcuffed him, and conducted a pat-down search. He found two paper bindles in Mr. Madrigal's right front pants pocket. Officer Light recognized that the bindles were folded in a manner consistent with transporting narcotics. He opened the bindles and found a white powdery substance, later determined to be cocaine.

Mr. Madrigal moved to suppress the cocaine contending: (1) there were insufficient facts to justify an investigatory stop; (2) the stop was overly intrusive; and (3) the opening of the bindles was an unreasonable search. The court denied the motion, ruling the search was incident to a lawful arrest because the officer was operating "under the aura of some illegal activity, either an assault, [or] a potential assault." The court found articulable facts to justify the investigative stop. Therefore, it concluded the subsequent warrant check, arrest and search were justified. Mr. Madrigal waived his right to a jury trial. The court found him guilty of possession of cocaine. This appeal followed.

INVESTIGATIVE STOP

Mr. Madrigal contends Officer Light did not have an articulable reasonable suspicion to justify the investigatory stop. Mr. Madrigal argues Officer Light neither observed threatening physical gestures nor heard any threats. Therefore, he concludes, no objective articulable facts suggested actual or potential criminal activity. Relying on *State v. Ellwood*, 52 Wn. App. 70, 74, 757 P.2d 547 (1988), he argues the tainted evidence should be suppressed.

■ While findings of the trial court following a suppression hearing are of great significance to a reviewing court, the appellate court makes an independent evaluation of the evidence. *State v. Mennegar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990). With regard to credibility issues, defer-

ence is given to the trial court because it has the opportunity to evaluate the demeanor of the witnesses. *Mennegar*, at 310.

■ An investigatory stop, although less intrusive than an arrest, is nevertheless a seizure and therefore must be reasonable under the Fourth Amendment and article 1, section 7 of the Washington Constitution. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986); *State v. Larson*, 93 Wn.2d 638, 641, 611 P.2d 771 (1980). Police may make an investigative stop even though there is not probable cause to believe a suspect is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 25-26, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Barber*, 118 Wn.2d 335, 342-43, 823 P.2d 1068 (1992); *State v. Glover*, 116 Wn.2d 509, 513, 806 P.2d 760 (1991). When making an investigatory stop, an officer is required by the Fourth Amendment to have a reasonable suspicion, based on objective facts, that an individual is involved in criminal activity. *State v. Thompson*, 93 Wn.2d 838, 840-41, 613 P.2d 525 (1980). When officers have a reasonable suspicion, they may stop the suspect, identify themselves and ask the person detained for identification and an explanation of his or her activities. *State v. Little*, 116 Wn.2d 488, 495, 806 P.2d 749 (1991) (relying on *State v. White*, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982)); *State v. Reeb*, 63 Wn. App. 678, 680-81, 821 P.2d 84 (1992).

*State v. Ellwood, supra*, is not controlling. There, the defendant was stopped because of his presence in an area with a history of burglaries. The officer did not observe any suspicious conduct. *Ellwood*, at 74. Here, Officer Light had a reasonable and articulable suspicion of criminal activity. He saw and heard Mr. Madrigal engaged in a loud altercation with Ms. Williamson. The stop was justified.

DURATION OF INVESTIGATIVE STOP

Mr. Madrigal contends that even if the initial stop was justified, the evidence seized should be suppressed because the basis for the investigatory stop had ended prior to the warrant check. He submits the request for his identification

and the warrant check exceeded the scope of Officer Light's investigatory stop. Mr. Madrigal concludes that the warrant check was an unreasonable extension of the initial contact.

██ After a lawful investigatory stop, an officer may temporarily detain a suspect pending the results of a police headquarters radio check. *State v. Sinclair*, 11 Wn. App. 523, 529, 523 P.2d 1209 (1974). Outstanding warrant checks during valid criminal investigatory stops are reasonable routine police procedures. *Reeb*, at 680-81; *State v. Williams*, 50 Wn. App. 696, 700, 750 P.2d 278 (1988).

Mr. Madrigal's reliance on *State v. DeArman*, 54 Wn. App. 621, 774 P.2d 1247 (1989) is misplaced. In *DeArman*, an officer observed an automobile stopped in an intersection. Believing it to be disabled, the officer approached. The automobile moved through the intersection; the officer then knew the vehicle was not disabled. Nevertheless, he became "suspicious", approached the vehicle and asked the driver for identification. *DeArman*, at 623. The court held that once it became apparent the automobile was not disabled, the officer had no reason to proceed with a stop. A generalized suspicion did not justify the stop. *DeArman*, at 626-27.

The facts here are distinguishable. Officer Light approached not because he was "suspicious", but because Mr. Madrigal was involved in a heated argument with a woman on a public street. Mr. Madrigal's body language was overpowering Ms. Williamson. As the officer approached, the couple continued to yell. An investigative stop was justified. The duration of the warrant check was only about 2 minutes. It did not unreasonably extend the initial contact.

We affirm.

MUNSON, J., concurs.

THOMPSON, A.C.J. (dissenting) — In my view, Officer Light improperly continued to detain Mr. Madrigal after his reasonable suspicion of criminal activity ceased to exist. I therefore respectfully dissent.

The scope of any governmental invasion of a citizen's personal security "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v. Ohio*, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 88 S. Ct. 1868, 1878 (1968) (quoting *Warden v. Hayden*, 387 U.S. 294, 310, 18 L. Ed. 2d 782, 87 S. Ct. 1642, 1652 (1967) (Fortas, J., concurring)). As applied to a *Terry* stop, this means that when a reasonable suspicion ceases to exist, continued detention is unlawful. 1 J. Hall, *Search and Seizure* § 15:18, at 639 (2d ed. 1991). "[I]n determining whether the length of time between the initiation of the stop and the later release or arrest was reasonable, courts should assay the facts of the particular case." (Footnote omitted.) 3 W. LaFave, *Search and Seizure* § 9.2(f), at 381 (2d ed. 1987).

Officer Light testified Ms. Williamson told him "there was no problem, no assault had taken place". Officer Light also stated: "She didn't appear that she had been assaulted." The trial court found that Ms. Williamson "was told she could leave after she said there was no problem, and . . . *that was fairly early in the contact* . . .". (Italics mine.) However, the trial court erroneously concluded: "I don't see that the articulable suspicion ended just because or that his right to request identification ceased the minute that Ms. Williamson was allowed to leave, even if she was allowed to leave early on." If a problem existed, it was diffused by the officer's presence. Once Officer Light was assured by Ms. Williamson that no assault had occurred, and no other facts justified a reasonable suspicion of criminal activity, he had no reason to continue to detain Mr. Madrigal. *Any* detention after that point in time was unconstitutional. The fact the continued detention for a warrant check took only about 2 minutes is immaterial.

Reliance on *State v. Williams*, 50 Wn. App. 696, 750 P.2d 278 (1988) and *State v. Sinclair*, 11 Wn. App. 523, 523 P.2d 1209 (1974) is misplaced. In both of those cases, the warrant checks were run *while* the law enforcement officer had a reasonable suspicion of criminal activity and *as part* of the investigation of that suspected activity. *See Williams*, at

700, which states: "The warrant check was conducted during the time the officer was lawfully questioning Williams about the accident." In *Sinclair*, the court notes at page 531: "Based upon the suspicion described, the officers were justified in temporarily detaining defendant pending radio confirmation of the warrant and his answers to their investigatory questions." Officer Light ran the warrant check on Mr. Madrigal *after* it became clear no crime had been committed.[1] The situation here is much closer to that in *State v. DeArman*, 54 Wn. App. 621, 625, 774 P.2d 1247 (1989). There, the court held the officer had no reason to compel the defendant to produce identification after it became apparent that his vehicle was not disabled, which was the initial reason the officer approached the defendant.

I therefore would reverse Mr. Madrigal's conviction based upon the trial court's failure to suppress the evidence seized.

---

[1]Also, *Williams* involved a traffic stop. The court specifically noted:
"We are not deciding the issue of the validity of warrant checks outside of situations wherein the officer has reasonable suspicion to stop the driver for traffic infractions occurring in the officer's presence or other crimes occurring in or out of the officer's presence as defined in RCW 10.31.100." *Williams*, at 700 n.1.