943 P.2d 266 (1997)
133 Wash.2d 140
STATE of Washington, Respondent,
v.
Travis Lee RIFE, Petitioner.
No. 64305-9.
Supreme Court of Washington, En Banc.
Argued March 25, 1997.
Decided August 28, 1997.
Reconsideration Denied October 9, 1997.
Michael L. Mittlestat, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Brian M. McDonald, Deputy, Seattle, for Respondent.
SMITH, Justice.
Petitioner Travis Lee Rife seeks review of a decision of the Court of Appeals, Division I, which affirmed his conviction in the King County Superior Court for possession of heroin in violation of the Uniform Controlled Substances Act, RCW 69.50.401(d). We granted review. We reverse.

QUESTION PRESENTED
The question presented in this case is whether a pedestrian who has been stopped by a police officer for a routine traffic infraction ("jaywalking") has been improperly seized when the police officer detains the pedestrian and conducts a warrant check and *267 verification as a matter of course without reasonable suspicion the pedestrian has committed any other offense.[1]

STATEMENT OF FACTS
On February 19, 1994 in Seattle at approximately 10:42 p.m. Officer Jason Chittenden of the Seattle Police Department observed Petitioner Travis Lee Rife, a pedestrian, alight from a public transit bus and cross Aurora Avenue near 85th Street[2] outside a crosswalk and against a traffic signal.[3] The officer stopped Petitioner, informed him he was stopping him for jaywalking, obtained identification from him, and made a radio check for outstanding warrants. The officer did not present a notice of infraction to Petitioner for his signature. Nor was any notice even issued.
The officer testified the Seattle Police Department does not have a policy requiring officers to run a check for outstanding warrants for pedestrians or drivers stopped for traffic violations, but that he normally runs a check anyway. Petitioner was cooperative at all times after he was stopped by the officer.
The warrant check lasted five to ten minutes, with verification taking an additional five to ten minutes. Petitioner was not free to leave during this period. The officer did not cite him for the traffic infraction ("jaywalking") for which he was stopped, but formally arrested him for two outstanding warrants determined in the warrant check.
At the police station, in a search incident to Petitioner's arrest under the outstanding warrants, Officer Chittenden discovered a bindle of heroin in Petitioner's pocket. Based upon this discovery, petitioner was charged by the King County Prosecuting Attorney in the King County Superior Court on February 24, 1994 with violation of the Uniform Controlled Substances Act, the Information reading:
That the defendant TRAVIS LEE RIFE in King County, Washington on or about February 19, 1994, unlawfully and feloniously did possess heroin, a controlled substance and narcotic drug;
Contrary to RCW 69.50.401(d), and against the peace and dignity of the State of Washington.[[4]]
At the CrR 3.6 hearing Petitioner moved to suppress the heroin, claiming the original pedestrian traffic stop was pretextual. His motion was denied. The case proceeded to trial upon stipulated facts. He was found "guilty" as charged. The trial court, the Honorable Janice Niemi, Judge Pro Tempore, concluded that because Petitioner committed the infraction of jaywalking, the officer had sufficient cause to stop him and request identification.[5] The court also concluded the warrant check was not intrusive; the officer properly arrested Petitioner under *268 the outstanding warrants; the heroin was found during a search incident to arrest; Petitioner's constitutional rights were not violated by the officer; and the heroin found during the search was admissible at trial. The motion for suppression of evidence was denied.[6]
Petitioner appealed his conviction, arguing his detention following his stop for a pedestrian traffic infraction to allow the officer to run a warrant check constituted an unlawful seizure under the Fourth Amendment to the United States Constitution and article I, Section 7 of the Washington Constitution. On April 15, 1996, the Court of Appeals rejected Petitioner's argument and affirmed the trial court. The court held "an officer may detain a person stopped for a routine traffic infraction for a reasonable period of time, in order to check for outstanding warrants, and upon receiving a positive response, for the additional time it takes to verify the warrants."[7] The Court of Appeals denied reconsideration on May 21, 1996.
Petitioner filed in this Court a motion for discretionary review which was granted on November 13, 1996.

DISCUSSION
Under Washington statutes, a pedestrian offense is "designated as a traffic infraction and may not be classified as a criminal offense" unless the violation falls into one of the exceptions provided by the statute.[8] The exceptions are not relevant to this case.
The duty to obey a police officer and the authority of the officer are expressed in RCW 46.61.021, which states:
(1) Any person requested or signaled to stop by a law enforcement officer for a traffic infraction has a duty to stop.
(2) Whenever any person is stopped for a traffic infraction, the officer may detain that person for a reasonable period of time necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction.

(3) Any person requested to identify himself to a law enforcement officer pursuant to an investigation of a traffic infraction has a duty to identify himself, give his current address, and sign an acknowledgment of receipt of the notice of infraction.[[9]]
Seattle Municipal Code § 11.31.010 uses almost identical language to RCW 46.61.021 except it uses "peace officer" instead of "law enforcement officer."[10] Neither the statute nor the Seattle Municipal Code grants authority for a police officer to run a warrant check after stopping a person for a routine traffic infraction. Neither the Legislature nor the Seattle City Council has included that authority in the statute or the code.

FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION
Petitioner argues detention of a person stopped for a pedestrian traffic infraction for an additional purpose and to run a warrant check without reasonable suspicion violates the Fourth Amendment of the United States Constitution. He further argues the warrant check expands the detention in scope and duration from what is necessary to address the traffic infraction and that it violates article I, Section 7 of the Washington Constitution.
Because of the decision we reach, we do not address the constitutional issues. Nor do *269 we believe the circumstances of this case rise to constitutional magnitude.

STATE V. ROTHENBERGER
The parties were specifically requested by this court to address the question whether State v. Rothenberger[11] provides authority relevant to this case. In Rothenberger the defendants appealed their King County conviction for burglary. This Court affirmed the conviction.
While driving through the State of Oregon, Ronald Dean Rothenberger and Samuel Eugene Pernar were stopped for a "routine check to determine if the driver was properly licensed to drive a motor vehicle...."[12] The driver did not have a driver's license, and was issued a citation for driving without a license. However, the passenger and owner of the automobile, upon showing his driver's license and switching positions in the vehicle, was allowed to drive away. Shortly after they drove away, the police officer determined from the name on the driver's license that the driver was wanted on felony charges. The officer radioed ahead. A roadblock was set up and the driver was arrested. The automobile was then searched and items relating to a burglary in Seattle were found. The King County charge followed. Defendants claimed the driver's identity would not have been discovered if they had not been unlawfully stopped by the Oregon police. This Court concluded that even if the stop were unlawful, the officer "having discovered from an independent source that Rothenberger was wanted on a felony charge, not only had the right but the duty to pursue Rothenberger and arrest him, if that was practicable, or to get that information to officers who could intercept him."[13] The court did not suppress the evidence obtained in the search of the automobile.[14]
Respondent State argues in this case that, regardless of the validity of the seizure, the heroin should be admitted in evidence because it was found after the defendant was lawfully arrested on outstanding warrants. Respondent states that, based on the "independent source" test announced in State v. Warner, "if there are intervening independent factors in the chain of causation from the original illegality to the evidence in question, the evidence will not be suppressed,"[15] the intervening independent factor in this case being the outstanding warrants found through the warrant check.
Citing United States v. Leon, Respondent states "[t]he primary purpose of the exclusionary rule is to deter police misconduct, not to provide a defendant with a sporting chance to dispose of incriminating evidence."[16] Respondent argues the inquiry should be directed to the conduct of the police officer and not to what the defendant may have done with the illegal substance if there had not been an improper stop or arrest.[17] Respondent claims the officer was "acting in good faith."[18] But this Court has not adopted that formulation of the exclusionary rule.
In State v. Boland[19] this Court stated the "primary objectives underlying the exclusionary rule" are:
[F]irst, and most important, to protect privacy interests of individuals against unreasonable governmental intrusions; second, to deter the police from acting unlawfully in obtaining evidence; and third, to preserve the dignity of the judiciary by refusing to consider evidence which has been obtained through illegal means.[[20]]
Respondent argues that under the "inevitable discovery rule" which was adopted after Rothenberger, if the evidence in question *270 would have been discovered from other than the tainted source, then it is admissible.[21] Respondent argues that if the officer had allowed Petitioner to depart and then concluded his warrant search, it is reasonably probable that upon learning of the outstanding warrant the officer would later have arrested Mr. Rife and the search incident to arrest would have revealed the heroin.
Petitioner argues there was a direct nexus between the unlawful detention and the seized heroin.[22] The heroin, he argues, was not revealed from an "independent source" but was directly connected to the unlawful detention.[23] Petitioner states the difference between his case and Rothenberger is that the defendants in that case were released after being illegally seized but that Petitioner Rife was not released. According to Petitioner:
This injected a significant intervening event into the equation, leading to speculation as to ... whether the evidence would have even been rightfully discovered, but-for the unlawful stop.... The only speculation here is whether Mr. Rife would have possessed the heroin had Officer Chittenden properly released him without the warrant check, then after learning of the outstanding warrant, located and arrested him.... Unlike in Rothenberger, there was no attenuating time, events, or independent sources leading to the discovery of the heroin.[[24]]
Respondent also argues that under Rothenberger, even if the detention was unduly long, the heroin would still be admissible.[25]Rothenberger does not address the issue of detaining a person for an "unduly long" period of time. But in State v. Williams this Court stated "[a] citizen's right to be free of governmental interference with [the citizen's] movement means, at a minimum, that when such interference must occur, it be brief and related directly to inquiries concerning the suspect."[26]
Rothenberger is distinguishable from this case and provides no authority relevant to it. Most significantly, in this case Petitioner Rife was detained for the traffic infraction ("jaywalking") but not released while the police officer ran the warrant search. In Rothenberger the defendants were released after the illegal seizure.

SUMMARY AND CONCLUSIONS
The Legislature through RCW 46.61.021(2) has authorized detention by a police officer investigating a traffic infraction for a "reasonable period of time necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction." This is not totally applicable to a stop for a pedestrian traffic infraction of "jaywalking," but seems obviously to apply to the driver of a vehicle. The Legislature did not grant police officers authority to search for outstanding warrants upon making a stop for a traffic infraction. The Seattle Municipal Code uses essentially the same language as the statute. Neither that code nor Seattle Police Department procedures authorizes police officers to run warrant checks on persons who have merely committed traffic infractions. The police officer in this case acknowledged he was following his own procedure which was not authorized by any ordinance, statute or regulation.
In this case the Washington Court of Appeals based its conclusion on the Fourth Amendment of the United States Constitution. In considering an almost identical issue of a warrant search following a routine traffic violation ("jaywalking"), the United States Court of Appeals for the Ninth Circuit held that, without reasonable grounds for suspicion of a crime, the continued detention was *271 unreasonable and the evidence rightfully suppressed.[27] However, this Court is not obligated to follow that decision. Nor do we believe this case is of constitutional magnitude.
This Court has stated that, as a general rule, warrantless seizures are per se unreasonable. The Court has restricted warrantless seizures to those supported by consent, exigent circumstances, searches incident to valid arrest, inventory searches, plain view and Terry[28] investigative stops.
The search in this case was unwarranted because the police officer had no authority to conduct it. The heroin seized thus must be suppressed.
We reverse the Court of Appeals, Division I, which affirmed the King County Superior Court in admitting in evidence heroin seized from Petitioner Travis Lee Rife in a search incident to his arrest upon outstanding warrants discovered during a warrant search when he was stopped for a pedestrian traffic infraction, "jaywalking."
DOLLIVER, JOHNSON, ALEXANDER and SANDERS, JJ., concur.
GUY, Justice, concurring.
Travis Rife did not commit a crime. He was stopped by a police officer for a traffic infraction. The only issue before this court is whether an officer has authority under the statute and ordinance to detain a person stopped for a noncriminal offense while the officer conducts a warrant check. The majority holds that an officer does not. I agree. I write separately because I believe our analysis of this appeal should end after we conclude that the statute and ordinance did not authorize the officer to detain Mr. Rife.[1]
RCW 46.61.021 and Seattle Municipal Code § 11.59.090[2] grant officers the authority to stop individuals for traffic infractions and govern what may occur during such stops.
The statute and ordinance grant the officer the authority to detain a person for a reasonable period of time in order to perform four tasks: (1) identify the person, (2) check the status of the person's license and insurance identification card, (3) check the status of the vehicle's registration, and (4) complete and issue a notice of traffic infraction. Neither law grants the officer authority to detain a person while the officer conducts a warrant search. Therefore, the detainment to conduct a warrant check in this case was not authorized by law.
The issue whether a detainment to conduct a warrant check during a noncriminal traffic stop violates the Fourth Amendment of the United States Constitution or article I, section 7 of this state's Constitution is not before this Court, and I would not now resolve it. We determine this case on statutory grounds. It is not necessary to address potential constitutional issues.
MADSEN, Justice, concurring.
Mr. Rife was stopped for a traffic infraction, "jaywalking," which is not classified as a criminal offense. See RCW 46.63.020. RCW 46.63.010 specifically explains the Legislature's purpose to decriminalize traffic offenses. The officer who stopped Mr. Rife stopped him solely because of the jaywalking, and accordingly had no reasonable suspicion that a crime had been committed. The officer therefore was not entitled to make a Terry stop and the detention constituted a violation of Const. art. I, § 7. The dissent erroneously treats this case as controlled by decisions allowing a brief detention and outstanding warrants check where the officer has probable cause to believe an individual has committed a misdemeanor in his or her presence. Dissent at 273-274.
*272 The only authority providing what the officer may do is found in RCW 46.61.021 and Seattle Municipal Code (SMC) 11.59.090. See State v. Cole, 73 Wash.App. 844, 849, 871 P.2d 656 (1994) (officer stopping a person for a traffic infraction may act only in accord with the authority granted in RCW 46.61.021(2)). The statute, which the ordinance mirrors, provides that when a person is stopped for a traffic infraction, the officer may detain the individual for a reasonable period of time "to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction." RCW 46.61.021(2). Neither the statute nor the ordinance allows a warrants check, and, contrary to the dissenting opinion, one is not necessary to verify the identity of the individual or the status of his or her license. See United States v. Luckett, 484 F.2d 89, 91 (9th Cir.1973) (detention of person stopped for jaywalking in order to run a warrants check exceeds detention authorized for purposes of identifying the violator and issuing a traffic citation).
Moreover, the dissent's reliance upon State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (1968) is misplaced. In contrast to the situation in Rothenberger, the search incident to Rife's arrest was not sufficiently attenuated from the unlawful detention to dissipate the taint of the illegality. In Rothenberger, the defendant was released after the illegal detention, and was later stopped after the detaining officer ran a warrants check using defendant's name, discovered the outstanding warrant, and notified other officers. Here, as in the case of State v. Ellwood, 52 Wash. App. 70, 74, 757 P.2d 547 (1988), it was not simply the defendant's name which led to seizure of drugs after an illegal stop, a warrants check, and then arrest on an outstanding warrant, but rather the defendant's "coerced continued presence at the scene...." (Emphasis added.) The connection between the illegal seizure of Mr. Rife and the seizure of the drugs was thus not sufficiently attenuated to dissipate the taint of the illegal detention.
While the dissent scoffs at Mr. Rife's argument that the officer should have released him and then later could have arrested him on the outstanding warrant, the argument is sound. Circumstances may then have been such that the taint was sufficiently attenuated precisely what happened in Rothenberger. Further, the dissent relies upon an unfortunate comparison to a situation where the officer receives a call on the radio during the course of an unlawful arrest stating that the detainee is wanted in connection with a crime. Dissent at 274 n. 1. While I recognize the comparison was advanced as dicta in Rothenberger, the hypothetical argument quite clearly involves an intervening event sufficient to attenuate the taint. Rather than resulting from the officer's continued illegal detention of the defendant while running a warrants check, the arrest and a search incident to that arrest would result from an unrelated event, i.e., the radio call and the information conveyed in that call.
Finally, the dissenting opinion states the court should uphold the routine practice of running a warrants check in these circumstances. The fact that a practice may be "routine" does not make it lawful.
I concur in the result reached by the majority.
ALEXANDER, J., concurs.
TALMADGE, Justice, dissenting.
The majority correctly indicates we must determine in this case the scope of a law enforcement officer's authority under RCW 46.61.021 or SMC 11.59.090 to conduct a warrant check on a person stopped for a routine traffic infraction. But the majority's narrow statutory interpretation forbids a routine and appropriate police practice designed to identify the person and verify the status of the person's drivers license. Washington case law has long accepted the view that a brief warrant check is a proper part of a stop for a traffic infraction. I see no reason to depart from the view expressed in these earlier cases. For these reasons, I respectfully dissent.
RCW 46.61.021(2) states:
Whenever any person is stopped for a traffic infraction, the officer may detain that person for a reasonable period of time *273 necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction.
As the majority notes, SMC 11.59.090 uses almost identical language. Op. at 268 n. 10.
Although RCW 46.61.021(2) does not specifically reference a warrant check and only generally relates to a stop for a vehicular traffic infraction, it does confer upon a law enforcement officer the authority to detain a person, for a reasonable period of time necessary to identify the person, and to check the status of the person's license. The brief detention of an individual stopped for a traffic infraction pending the results of a warrant check has become so ingrained into routine police practices as to be a necessary aspect of a law enforcement officer's process to identify the detainee and verify the status of his or her license. The Court of Appeals below correctly determined that Rife's seizure was not unreasonable, under the totality of the circumstances, balancing the character of the intrusion and its justification against his right to personal autonomy. State v. Rife, 81 Wash.App. 258, 261-62, 913 P.2d 850 (1996). The Court of Appeals also stated that with the development of computerized data storage, the length of time required to run a warrant check is usually so brief that detention is minimal, thereby quickly satisfying the State's plain statutory need to identify the individual and verify his or her license status. Moreover, the State has an additional interest served by such warrant checks immediate apprehension of individuals with outstanding arrest warrants.
Where officers have probable cause to believe an individual has committed a misdemeanor in their presence, Washington courts have frequently indicated that the brief detention, for the purpose of checking whether there are any outstanding warrants on the individual, is reasonable and proper. State v. Kerens, 9 Wash.App. 449, 452, 513 P.2d 63 (upholding a warrant check during a stop and citation for a pedestrian traffic infraction, illegal hitchhiking), review denied, 83 Wash.2d 1003 (1973); see also State v. Perea, 85 Wash.App. 339, 342, 932 P.2d 1258 (1997) (officers may temporarily detain a suspect pending the results of a police headquarters radio check); State v. Madrigal, 65 Wash.App. 279, 283, 827 P.2d 1105 (1992) (after a lawful investigatory stop, an officer may temporarily detain a suspect pending the results of a police headquarters radio check); State v. Reeb, 63 Wash.App. 678, 680-81, 821 P.2d 84 (1992) (outstanding warrant checks during valid criminal investigatory stops are reasonable routine police procedures); State v. Williams, 50 Wash.App. 696, 750 P.2d 278 (1988) (approving checks for outstanding warrants during valid criminal investigatory stops as reasonable routine police procedures, and holding so long as the duration of the warrant check does not unreasonably extend the initially valid contact, the purpose behind warrant checks supports their use); State v. Thompson, 24 Wash.App. 321, 601 P.2d 1284 (1979) (warrant check during investigatory stop held reasonable; conviction reversed on insufficient grounds to support reasonable suspicion to stop defendant), rev'd on other grounds, 93 Wash.2d 838, 613 P.2d 525 (1980); State v. Sinclair, 11 Wash.App. 523, 529, 523 P.2d 1209 (1974). The majority overrules these cases sub silentio.
In the present case, there is no question but that Officer Chittenden saw Rife, who was outside a crosswalk, cross a number of lanes of traffic against a traffic signal on Aurora Avenue, a very busy Seattle street. It is clear Rife committed a pedestrian traffic infraction in the officer's presence and, it was appropriate for that officer under the Seattle Municipal Code and statute, as part of the officer's investigation of the infraction, to briefly detain Rife pending a warrant check to verify his identity and the status of his license. Only by conducting a brief warrant check could the officer fully verify Rife's identity and the status of his license.
Under the majority's opinion, while the Legislature may amend RCW 46.61.021 (and the Seattle City Council its ordinance) to address the concerns set forth in the majority's analysis, I do not believe such is necessary. When an individual commits a traffic infraction in the presence of a police officer, the individual's brief detention for the purpose of verifying his or her identity and *274 drivers license status, including a brief warrant check, is a routine and reasonable police practice under RCW 46.61.021 and its local counterpart ordinance. Such a practice, if brief, serves the statutory purpose of verifying the individual's identity and license status and also serves the larger purpose of enforcing arrest warrants. We should uphold such a routine law enforcement practice.
An additional basis for affirming the trial court judgment is found in State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (1968). The majority asserts Rothenberger is distinguishable because here Rife was "not released while the police officer ran the warrant search." Op. at 270. This misses the point of our decision in that case. In Rothenberger, we presumed, without so holding, that the Oregon traffic stop which precipitated Rothenberger's warrant check was illegal. Rothenberger, 73 Wash.2d at 600, 440 P.2d 184. Nevertheless, after his release from the traffic stop, Rothenberger was apprehended and arrested based on a valid, outstanding Arizona warrant. Incident to that arrest, his car was searched and several items of automotive equipment were found. The automotive equipment was later determined to be part of the loot from a Seattle burglary for which Rothenberger was then charged. Rothenberger argued that all of the evidence secured was "tainted" by the original (unlawful) traffic stop and must be excluded. We affirmed Rothenberger's conviction for the burglary, finding no "taint" on the evidence secured via a search following a valid arrest based on an outstanding warrant. See id. at 600-01, 440 P.2d 184.
Rothenberger directs that the taint of an unlawful stop does not affect evidence secured through a search incident to an intervening arrest on a valid outstanding warrant. Id. at 601, 440 P.2d 184. The valid arrest based on the warrant and incidental search provide an "independent source" for the evidence free of any alleged taint. We reaffirmed this approach in State v. Warner, 125 Wash.2d 876, 889 P.2d 479 (1995), holding:
[I]f there are intervening independent factors in the chain of causation from the original illegality to the evidence in question, the evidence will not be suppressed as "fruit". Also, if there was an independent source for the evidence, then it need not be excluded.
Warner, 125 Wash.2d at 888, 889 P.2d 479 (citation omitted).
As the Rothenberger case reiterates, whether the initial stop was proper or not is not crucial because an officer has a duty to arrest a person on an outstanding warrant. Rothenberger, 73 Wash.2d at 599, 440 P.2d 184. Whether, as in Rothenberger, the discovery of that warrant occurs after the officer has released the person named on the warrant, or as in this case, discovery of the warrant occurs while the person is being detained pursuant to a traffic infraction, is irrelevant. Under Rothenberger, a subsequent arrest on a valid outstanding warrant is lawful and evidence obtained through a search incident to that arrest is not tainted, and thus not subject to suppression. When Officer Chittenden discovered Rife's outstanding warrant, he had a duty to arrest Rife, and the evidence secured via a search incident to such valid arrest is admissible. See id. at 599-601, 440 P.2d 184.[1]
Rife's release and subsequent arrest are not necessary where, as in this case, the *275 original stop was not pretextual, an outstanding warrant was discovered during the stop, and the subsequent arrest and search were based on the warrant.[2] In State v. Chapin, 75 Wash.App. 460, 879 P.2d 300 (1994), review denied, 125 Wash.2d 1024, 890 P.2d 465 (1995), the Court of Appeals held that where a stop based on a traffic infraction was objectively reasonable, and a reasonable officer would have made the stop under the same objectively reasonable circumstances, the stop was not pretextual. Id. at 468, 879 P.2d 300. The Court of Appeals upheld the trial court's denial of Chapin's motion to suppress evidence, where the evidence was seized during a search, which followed an arrest based on a warrant discovered in a warrants check conducted during Chapin's valid traffic stop.
Likewise, in Rife's case there was no pretextual stop. A warrants check during the lawful traffic stop revealed an outstanding warrant on Rife. Rife was arrested on the warrant, and a search incidental to that arrest uncovered illegal drugs. Where the stop was not pretextual and the evidence was secured in a valid search incidental to a valid arrest, pursuant to a valid warrant, suppression is not appropriate. Chapin, 75 Wash. App. 460, 879 P.2d 300. See also State v. Davis, 35 Wash.App. 724, 727, 669 P.2d 900 (1983) (search and seizure following an arrest based on a preexisting warrant are valid).
I would affirm Rife's conviction for possession of heroin in violation of the Uniform Controlled Substances Act, RCW 69.50.401(d).
DURHAM, C.J., concurs.
NOTES
[1] There is no offense actually designated as "jaywalking" under the Revised Code of Washington or the Seattle Municipal Code. The parties and the court, however, referred to the event as "jaywalking." Seattle Municipal Code § 11.40.020 provides "Pedestrians shall be subject to traffic-control signals as provided in Chapter 11.50 and to the direction of officers discharging the duty of directing traffic. (RCW 46.61.020)"
[2] Transcript of Trial at 10, 13. Petitioner lived at 926 North 86th Street, approximately one-and-a-half blocks from where he was stopped. See id. at 40 and 47.
[3] Facts adapted from State v. Rife, 81 Wash.App. 258, 913 P.2d 850 (1996); see also Order on Stipulated Facts TrialFindings of Fact and Conclusions of Law, King County Cause Number XX-X-XXXXX-X.
[4] Information, King County Cause Number XX-X-XXXXX-X RCW 69.50.401(d) states:

It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a crime, and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both, except as provided for in subsection (e) of this section.
[5] The date of the court's finding is not clear from the record. The Judgment and Sentence filed July 6, 1994 was signed on June 23, 1994, but by a different judge. The Order on Stipulated Facts TrialFindings of Fact and Conclusions of Law was signed by Judge Janice Niemi on January 4, 1995.
[6] See Finding of Fact, Conclusions of Law Pursuant to CrR 3.6, King County Number XX-X-XXXXX-X; see also Order on Stipulated Facts TrialFindings of Fact and Conclusions of Law, Number XX-X-XXXXX-X.
[7] State v. Rife, 81 Wash.App. 258, 261, 913 P.2d 850 (1996).
[8] RCW 46.63.020 (Violations as traffic infractions Exceptions); see RCW 46.61.050 (Obedience to and required traffic control devices); see also Seattle Municipal Code (SMC) 11.31.010 (Violations as traffic infractions); SMC 11.31.060(C) ("The burden of proof is upon the City to establish the commission of the infraction by a preponderance of the evidence.").
[9] RCW 46.61.021 (emphasis added); see SMC 11.59.090.
[10] SMC 11.59.090 (Duty to obey a police officerTraffic infraction).
[11] 73 Wash.2d 596, 440 P.2d 184 (1968).
[12] Id. at 597, 440 P.2d 184.
[13] Id. at 599, 440 P.2d 184.
[14] Id. at 601, 440 P.2d 184.
[15] 125 Wash.2d 876, 888, 889 P.2d 479 (1995).
[16] Supplemental Br. of Resp't at 15 (citing United States v. Leon, 468 U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984)).
[17] Id.
[18] Id. at 16.
[19] 115 Wash.2d 571, 800 P.2d 1112 (1990).
[20] Id. at 581, 800 P.2d 1112.
[21] Supplemental Br. of Resp't at 16 (citing State v. Warner, 125 Wash.2d 876, 889, 889 P.2d 479 (1995) ("Absolute inevitability of discovery is not required but simply a reasonable probability that evidence in question would have been discovered other than from a tainted source.")).
[22] Supplemental Brief of Pet'r at 22.
[23] Id.
[24] Id. at 22-23.
[25] Supplemental Br. of Resp't at 16.
[26] 102 Wash.2d 733, 741, 689 P.2d 1065 (1984).
[27] United States v. Luckett, 484 F.2d 89 (9th Cir.1973).
[28] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[1] State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (1968), is distinguishable because the police conduct examined there was not limited by a statute which set out standards governing the detention of persons for noncriminal offenses.
[2] Seattle Municipal Code § 11.59.090 is basically a reiteration of RCW 46.61.021 but substitutes" "peace officer" for "law enforcement officer."
[1] See also State v. Mennegar, 114 Wash.2d 304, 787 P.2d 1347 (1990), rejected on other grounds by State v. Hill, 123 Wash.2d 641, 645, 870 P.2d 313 (1994), in which this Court held:

Once the officer discovered the existence of an outstanding arrest warrant [on an automobile passenger whom the officer had not detained], the officer was clearly and properly performing his duty by arresting the passenger. The contraband was discovered during the search incident to a valid arrest. A reasonable search of an arrestee's person is justified by the fact of his lawful arrest. The search and seizure were lawful.
Mennegar, 114 Wash.2d at 314, 787 P.2d 1347 (footnote omitted). Rife's argument that Officer Chittenden should have cited Rife for the traffic infraction, released him, and then arrested him on the outstanding warrant is absurd. As we noted in Rothenberger, 73 Wash.2d at 599, 440 P.2d 184:
It is our view that Officer Edwards, having discovered from an independent source that Rothenberger was wanted on a felony charge, not only had the right but the duty to pursue Rothenberger and arrest him, if that was practicable, or to get that information to officers who could intercept him.
To illustrate just how ridiculous the appellants' contention is, let us assume that while detaining the appellants on an unlawful arrest, word had come over the radio that Rothenberger and Pernar were wanted for a burglary in Seattle. On appellants' theory, the officer supposedly had no alternative but to touch his hat and say, "Gentlemen, be on your way. I am sorry to have unlawfully detained you." We find neither reason nor judicial precedent for such a change in the rules of the long continued game of "Cops and Robbers."
Rife's suggestion is equally absurd.
[2] The concurrence relies on United States v. Luckett, 484 F.2d 89 (9th Cir.1973); State v. Cole, 73 Wash.App. 844, 871 P.2d 656, review denied, 125 Wash.2d 1003, 886 P.2d 1134 (1994); and State v. Ellwood, 52 Wash.App. 70, 757 P.2d 547 (1988). Concurrence at 2. As the Court of Appeals noted below, the Luckett holding is not universally supported. See State v. Rife, 81 Wash.App. 258, 262 n. 2, 913 P.2d 850 (1996), citing cases. Cole and Ellwood are also distinguishable. Unlike our case, no outstanding warrant is involved in Cole. Ellwood is distinguishable because the original stop therein was unlawful.