[No. 40341-9-I.   Division One.   January 25, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY CHELLY, JR., *Appellant*.

*Jason B. Saunders* of *Washington Appellate Project,* for appellant.

*James H. Krider, Prosecuting Attorney*, and *Breck W. Marsh, Deputy*, for respondent.

GROSSE, J. — Individuals who have committed a traffic infraction have the obligation to sufficiently identify themselves to the officer issuing a citation. Failure to do so is a misdemeanor. Thus, where the facts give rise to a reasonable belief that an individual has provided a false identity, that reasonable belief justifies extending detention to permit a warrants check.

On April 9, 1996, Officer Thacker of the Everett Police Department was patrolling a known drug area in Everett. He received information that for a period of at least the last year, a white Monte Carlo automobile driven by a black male had been entering this area and distributing cocaine. Officer Thacker observed a white Monte Carlo containing three dark-complexioned males exiting the apartment complex. The officer followed the vehicle, noticed that one of its rear brake lights was not working, and stopped the vehicle. Chelly, the driver of the vehicle, identified himself to Officer Thacker.

The officer saw that the two passengers in the vehicle were not wearing safety belts, a traffic infraction. He asked the two passengers if they could present identification. The passenger in the front seat handed an identification card to another officer on the scene. Martinez, the passenger in the back seat, stated that he had no identification on him. Officer Thacker then asked Martinez if he had ever had identification. Martinez responded that he had not. Martinez appeared to the officer to be in his mid-20s. According to Officer Thacker, it is highly unusual for anyone over

16 years of age to state that he has never had identification. Based on his experience, Officer Thacker anticipated that because Martinez said he had no identification, he was likely to give a false name in order to conceal his identity, probably due to outstanding warrants for his arrest. Officer Thacker also noticed that all three of the occupants were exceedingly nervous and sweating, and that none of them made eye contact with him.

Hearing Martinez's response and anticipating being given a false name, Officer Thacker decided to take Martinez out of the earshot of the other occupants in order to prevent them from corroborating Martinez's false name. Because the automobile was a two-door, it was necessary for the officer to ask Chelly to exit the vehicle in order to allow Martinez to get out of the back seat. Once separated, Martinez gave Officer Thacker what turned out to be a false name, a false birth date, and a correct social security number. The officers ran the information in a warrants check and came up with a number of warrants based on names and birth dates that were very similar to those Martinez gave.

Officer Thacker confronted Martinez with the results of the warrants check, but Martinez maintained that the name and birth date he gave were accurate. The officer then questioned Chelly, who "correctly" identified Martinez. The officer arrested Martinez on the outstanding warrants. The search of the automobile incident to that arrest revealed a firearm under the front seat and 164 grams of cocaine in the unlocked console between the front bucket seats.

Chelly was charged with possession of a controlled substance with intent to manufacture or deliver while armed with a firearm. He moved to suppress the evidence uncovered during the search of the vehicle on the ground that the detention went beyond the permissible scope of a detention for a traffic infraction. The trial court denied his motion, the case proceeded to trial, and Chelly was found guilty as charged.

■ Before reaching the issue of whether the trial court erred in denying Chelly's motion to suppress, we address the State's contention that Chelly lacks standing to challenge Martinez's detention and Chelly's response that he has automatic standing under the circumstances. Under the automatic standing rule, "a defendant has standing to claim the constitutional protection from unreasonable searches and seizures if he was legitimately on premises where a search occurred and if the fruits of the search are proposed to be used against him."[1] Thus, under the state constitution, a defendant who has been charged with an offense that has possession as an element has automatic standing to challenge the search that led to the discovery of the substance the defendant is charged with possessing.[2] The United States Supreme Court has abolished automatic standing under the Fourth Amendment.[3] Our Supreme Court, however, announced in a plurality opinion that notwithstanding the United States Supreme Court's decision, it would continue to adhere to the automatic standing rule under the state constitution.[4] In a later case, the court noted that although the automatic standing rule had been called into question under federal law, it declined to abolish the rule under state law.[5] Thus, the automatic standing rule remains viable under our state constitution and application of the rule to the present case confers standing on Chelly to challenge the search and seizure.

■ ■ A police officer's act of stopping a vehicle and detaining its occupants constitutes a seizure,[6] and to be lawful, it must have been justified at its inception and rea-

---

[1]*State v. Michaels*, 60 Wn.2d 638, 646, 374 P.2d 989 (1962).

[2]*State v. Simpson*, 95 Wn.2d 170, 179, 622 P.2d 1199 (1980) (citing *State v. Michaels*, 60 Wn.2d at 644-47).

[3]*United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980).

[4]*Simpson*, 95 Wn.2d at 181.

[5]*State v. Carter*, 127 Wn.2d 836, 849-50, 904 P.2d 290 (1995).

[6]*State v. Takesgun*, 89 Wn. App. 608, 610, 949 P.2d 845 (1998) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)).

sonable in scope.[7] A police officer's decision to stop an automobile is reasonable where the officer has probable cause to believe that a traffic violation has occurred.[8] The subjective intentions of the officer generally play no role in the typical probable cause analysis.[9] Here, Officer Thacker had grounds to stop Chelly's vehicle because one brake light was not working.[10] Driving a vehicle with an inoperative brake light is a traffic infraction.[11] Thus, Officer Thacker's initial stop of the vehicle was lawful.

Failure to wear a safety belt while operating or riding in a motor vehicle is also a traffic infraction.[12] At the time of the incident in question, the statute governing stops for traffic infractions gave police officers the authority to detain a person for a reasonable period of time necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction.[13] "Any person requested to identify himself or herself to a law enforcement officer pursuant to an investigation of a traffic infraction has a duty to identify himself or herself, give his or her current address, and sign an acknowledgment of receipt of the notice of infraction."[14] The requirement that one identify himself pursuant to an investigation of a traffic offense includes passengers of a vehicle stopped for a

---

[7]*State v. Henry*, 80 Wn. App. 544, 549-50, 910 P.2d 1290 (1995).

[8]*Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

[9]*Whren*, 517 U.S. at 813; *State v. Ladson*, 86 Wn. App. 822, 825-26, 939 P.2d 223 (1997), *review granted*, 133 Wn.2d 1028 (1998). Oral argument in *Ladson* was heard on May 20, 1998 on the issue of whether evidence must be suppressed under the Washington constitution if it is obtained in a pretextual traffic stop.

[10]RCW 46.37.070(1).

[11]RCW 46.63.020.

[12]RCW 46.61.688(3); RCW 46.63.020.

[13]Former RCW 46.61.021(2). In 1997, this subsection was amended to add "check for outstanding warrants" to the list of purposes for which a person stopped for a traffic infraction may be detained.

[14]RCW 46.61.021(3).

traffic infraction where the officer has an independent basis, such as a safety belt violation, for requesting a passenger's identification.[15]

Noticing that the passengers were not wearing safety belts, Officer Thacker had the authority to detain them for a reasonable period of time necessary to identify them. The legitimate scope of the stop properly expanded at that point beyond a stop only for the initial traffic infraction, the inoperative brake light.[16] Pursuant to the statute, RCW 46.61.021(3), the passengers had a duty to identify themselves to Officer Thacker. Any person who wilfully fails to fulfill this statutory duty to identify himself or herself when requested to do so as part of an investigation of a traffic infraction is guilty of a misdemeanor.[17] When Martinez told Officer Thacker that he did not have, and had never possessed, identification, Officer Thacker suspected, based on the circumstances including his 15 years of experience as a police officer and Martinez's age and demeanor, that Martinez was trying to hide his identity and would likely provide a false name.[18] Under the totality of the circumstances, the specific and articulable facts taken together with rational inferences from those facts, we find Officer Thacker's detention of Martinez for a reasonable time for

---

[15]*State v. Chapin*, 75 Wn. App. 460, 464 n.5, 879 P.2d 300 (1994).

[16]*Ladson*, 86 Wn. App. at 830 n.5 (noting that the legitimate scope of the traffic stop for driving with expired vehicle tabs legitimately expanded upon the officer's discovering that the driver was driving with a suspended license).

[17]*See* RCW 46.61.022 which states:

Any person who wilfully fails to stop when requested or signaled to do so by a person reasonably identifiable as a law enforcement officer *or to comply with RCW 46.61.021(3), is guilty of a misdemeanor.*

(Emphasis added.)

[18]"Vehicle passengers are not required to carry driver's licenses or other identification." *State v. Cole*, 73 Wn. App. 844, 848, 871 P.2d 656 (1994) (citing *State v. Barwick*, 66 Wn. App. 706, 709, 833 P.2d 421 (1992)). There is no support for the claim that Officer Thacker's decision to detain Martinez was based solely on the fact that Martinez was not carrying identification at the time of the stop.

the purpose of ascertaining his true identity was warranted.[19]

It is on this ground that the present case is distinguishable from *State v. Cole*.[20] There, an officer stopped a car for three traffic infractions. As another officer approached the passenger door, he noticed that Cole, the passenger, was not wearing a safety belt. Although Cole did not have identification with him, he did give the officer his name and address when asked to do so. Unlike in the present case, the officer had no reason to believe that the name and address Cole provided were false. Because Cole complied with his duty in RCW 46.61.021(3) to identify himself and provide his current address, the officer had no authority to detain him further by asking him to exit the car while the officer confirmed his identity. In the present case, Martinez did not comply with this duty and Officer Thacker had a reasonable suspicion that Martinez was not going to supply his true identity.[21]

We reject Chelly's contention that the warrant check rendered the detention illegal. Once Martinez gave false identifying information, it was reasonable for the officer to suspect that Martinez was attempting to hide his identity for a reason, most likely because of outstanding arrest warrants. Checking for outstanding warrants during a valid criminal investigatory stop is a reasonable routine police practice, and warrant checks are permissible as long as the duration of the check does not unreasonably extend the initially valid contact.[22] There is nothing in the record to suggest that the warrant check unreasonably added to the length of the detention.

---

[19]*Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Belieu*, 112 Wn.2d 587, 595-96, 773 P.2d 46 (1989).

[20]*State v. Cole*, 73 Wn. App. 844, 871 P.2d 656 (1994).

[21]Similarly, the present case is distinguishable from *State v. Barwick*, 66 Wn. App. 706, 833 P.2d 421 (1992), in which the defendant provided photo identification to the officer upon request. Despite the defendant's compliance with the officer's request, the officer nonetheless required the defendant to exit the car and place his wallet on the hood of the police car for inspection.

[22]*State v. Williams*, 50 Wn. App. 696, 700, 750 P.2d 278 (1988).

The Supreme Court's opinion in *State v. Rife*[23] is also distinguishable. In that case, the defendant, stopped for a traffic infraction, gave the police officer identification as requested. Despite the defendant's compliance with the duty to provide identification, the officer proceeded to make a radio check for outstanding warrants. The officer arrested Rife on two outstanding warrants and found a bindle of heroin in Rife's pocket during a search incident to the arrest. The court held that the warrant check was unlawful because neither the Seattle Municipal Code nor RCW 46.61.021 gave the officer authority to search for outstanding arrest warrants upon making a stop for a traffic infraction.[24] Unlike the instant case, the officer who detained Rife had no reason to suspect that the identification was false. Thus, unlike here, the officer in *Rife* had no reason to believe that Rife breached his statutory duty to identify himself during an investigation of a traffic infraction or that Rife was seeking to hide his identity from the officer because of outstanding arrest warrants. Once Rife complied with the statute, the officer had no authority to detain Rife further. By contrast, Officer Thacker had a reasonable suspicion that any oral identification provided by Martinez would be false and that Martinez would thereby fail to comply with the statutory duty to identify himself. At that point, the scope of the permissible detention broadened beyond that permitted by RCW 46.61.021 and Officer Thacker's authority was no longer defined by that statute. Under the circumstances, the officer's running the warrants check was reasonable and permissible.

██ ██ Once an officer discovers the existence of an outstanding warrant for a person's arrest, the officer has a duty to arrest.[25] Upon lawfully arresting Martinez on the outstanding warrants, Officer Thacker had the authority to

---

[23]*State v. Rife*, 133 Wn.2d 140, 943 P.2d 266 (1997).

[24]*Rife*, 133 Wn.2d at 150. Since the *Rife* opinion, RCW 46.61.021 has been amended to confer on officers the authority to check for outstanding warrants during stops for traffic infractions.

[25]*State v. Mennegar*, 114 Wn.2d 304, 314, 787 P.2d 1347 (1990).

conduct a search of the automobile incident to the arrest.[26] "A search of the passenger compartment of a vehicle, excluding locked containers, immediately after arrest for weapons or destructible evidence is valid even when a passenger, not the driver, is arrested."[27] The firearm and the drugs found in Chelly's automobile were found in the passenger compartment and not in any locked container. Thus, the search was valid and the evidence properly admitted.

The judgment of the trial court is affirmed.

KENNEDY, C.J., and COLEMAN, J., concur.

Review denied at 138 Wn.2d 1009 (1999).

---

[26]*New York v. Belton*, 453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986).

[27]*State v. Hill*, 68 Wn. App. 300, 308, 842 P.2d 996 (1993).