[No. 58463-4-I. Division One. February 4, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. MARIANO BELLO, *Defendant*, ADRIAN ALEXANDER LOPEZ, *Appellant*.

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*David S. McEachran*, *Prosecuting Attorney for Whatcom County*, and *Kimberly A. Thulin*, *Deputy*, and *Thomas E. Seguine*, *Prosecuting Attorney for Skagit County*, and *Rosemary H. Kaholokula*, *Deputy*, for respondent.

¶1 Dwyer, J. — Article I, section 7 of the Washington State Constitution[1] prohibits the police from performing warrantless searches of items that the officers know or should know are the personal effects of a vehicle occupant incident to the arrest of a different vehicle occupant, unless those personal effects were in the immediate control of the arrested person prior to the arrest. *State v. Jones*, 146 Wn.2d 328, 336, 45 P.3d 1062 (2002). In this case, police officers performed a warrantless search of Adrian Lopez's car incident to the lawful arrest of the car's backseat passenger, Mariano Bello. The search revealed ecstasy pills hidden in a compact disc (CD) container that had been on the seat next to Bello immediately prior to his arrest. Lopez was then also arrested. Additional ecstasy pills were discovered in Lopez's coat pocket. In this appeal, Lopez contends that the search of his vehicle and the CD container located within was conducted in violation of article I, section 7.[2] We hold to the contrary, ruling that because Lopez gave no indication that the CD container belonged to him and because the container was within Bello's span of control immediately prior to his arrest, the search was lawful.[3] Accordingly, we affirm.

---

[1] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art. I, § 7.

[2] No evidence was found in the search of the car, other than the evidence located in the CD container. Thus, other than the evidence found in the CD container, there was no evidence subject to suppression arising from the search of the car. Therefore, we address the propriety of the search of the CD container and do not concern ourselves with other aspects of the officers' behavior.

[3] Lopez separately assigns error to his conviction in the superior court by contending that the police did not have probable cause to arrest him. However, Lopez presents neither legal authority nor argument supporting this assignment of error. RAP 10.3(a)(5) requires the appellant to present argument supporting the issues presented for review, citations to legal authority, and references to relevant parts of the record. "Assignments of error unsupported by citation authority will not be considered on appeal unless well taken on their face." *State v. Kroll*, 87 Wn.2d 829, 838, 558 P.2d 173 (1976). We need not consider arguments that a party has not developed in the briefs and for which the party has cited no authority. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990). We hold, therefore, that Lopez waived this assignment of error, and we do not consider it further.

*FACTS*

¶2 Whatcom County Sheriff's Deputy James Triplett initiated a traffic stop of Lopez's car after pacing it traveling at approximately 38 miles per hour in a 25-mile-per-hour zone. As the car pulled over, Deputy Triplett noticed the passenger in the back seat, Bello, duck out of sight for approximately four seconds.

¶3 Deputy Triplett exited his patrol vehicle and approached Lopez's car. When he reached the car, he requested the license, registration, and insurance information of the driver, Lopez. The front-seat passenger, Domingo Rabang, passed Deputy Triplett a laser pointer, commenting that it was what Deputy Triplett was looking for and stating that he thought that the traffic stop had been initiated because he had been activating the laser pointer out of the windows of the moving vehicle. Deputy Triplett also observed that Bello was not wearing a seat belt. Deputy Triplett then requested and was provided with identification from all three men in the car. The identification correctly showed that Lopez was the driver, Rabang was the front-seat passenger, and Bello was the backseat passenger.

¶4 Deputy Triplett then radioed the identities of the three men to the sheriff's office dispatcher in order to check for outstanding warrants or "wants" (indications that an individual is wanted by law enforcement for some purpose short of an arrest warrant). Deputy Triplett immediately received a response to his inquiry in the form of a mobile telephone call from Sergeant Hester. Sergeant Hester informed Deputy Triplett that Bello had "a drug history" and had previously been arrested on federal drug charges. Around this time, Bellingham Police Officer Brandland also arrived at the scene of the traffic stop.

¶5 Based on the information provided by Sergeant Hester, Deputy Triplett radioed a request for assistance to Whatcom County Sheriff's Deputy Anthony Paz, a narcotics

detection canine handler. Soon after Deputy Triplett requested Deputy Paz's assistance, and at the same time that Deputy Paz was pulling up to the scene of the traffic stop in his patrol vehicle, the sheriff's office dispatcher informed Deputy Triplett that a warrant existed for the arrest of Bello.

¶6 Bello was asked to step out of the car, was arrested, and was read his *Miranda*[4] rights by Officer Brandland. Following that, Deputy Paz had Lopez and Rabang step out of the car so that Deputy Paz could search it incident to Bello's arrest. The search was initiated by Deputy Paz, using his dog to investigate the interior of the vehicle. The dog was trained to alert only to narcotics. During the search, the dog alerted to two locations in the car, the rear passenger seat and the front passenger seat. Deputy Paz removed the dog from the car. He then conducted a hand search of the car. He began this search in the rear seating area, where he found an unlocked CD container approximately one foot by six inches in size. Deputy Paz unzipped the CD container and searched inside it. Secreted behind one of the pages containing CDs was a plastic bag, which Deputy Paz removed. The bag contained approximately 80 green pills, each of which was marked with a trefoil or club symbol of the type found on a playing card. Deputy Paz informed Deputy Triplett that he believed the pills were ecstasy.

¶7 Deputy Triplett then asked Bello, already in custody, if he knew anything about the pills. Nodding in Lopez and Rabang's direction, Bello stated that he knew nothing about the pills and that Deputy Triplett should ask Lopez and Rabang about them. Lopez and Rabang also stated that they knew nothing about the pills. At this point, Deputy Triplett placed Lopez under arrest. Deputy Triplett then read Lopez his *Miranda* rights and asked him if he had anything illegal on his person. Lopez reluctantly admitted that he had additional ecstasy pills in his coat pocket, which Deputy Triplett recovered upon searching Lopez.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶8 In a subsequent suppression hearing, Lopez challenged the constitutionality of the search of his vehicle. Lopez testified that the CD container in the back of the car belonged to Bello and that Bello had brought it with him when he was picked up by Lopez earlier that evening. The superior court ruled that the search of Lopez's vehicle was properly conducted incident to the arrest of Bello. Accordingly, the superior court denied Lopez's motion to suppress the evidence of the ecstasy pills obtained by the search and the pills subsequently obtained during the search of Lopez's person incident to his own arrest. Following a trial on stipulated facts, the superior court found Lopez guilty of possession of a controlled substance, fined him, and sentenced him to three months in jail. He now appeals.

## *DISCUSSION*

### *Standard of Review*

¶9 A superior court's conclusion that a warrantless search of a vehicle did not violate article I, section 7 of the Washington State Constitution is reviewed de novo on appeal. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).[5]

### *Legality of the Search*

¶10 Lopez contends that the Supreme Court's decision in *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999) (plurality opinion), requires the suppression of the evidence obtained against him and the reversal of his conviction.

---

[5] The state Supreme Court has long held that article I, section 7 differs in its effect from the Fourth Amendment to the United States Constitution. *See State v. Ringer*, 100 Wn.2d 686, 699, 674 P.2d 1240 (1983), *overruled on other grounds by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986) (plurality opinion). Because the Supreme Court has already performed an analysis of the basis for the different effects of the two constitutional provisions as required by *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), we need not repeat that analysis. *See State v. Parker*, 139 Wn.2d 486, 493 n.2, 987 P.2d 73 (1999) (plurality opinion) (citing *State v. White*, 135 Wn.2d 761, 769, 958 P.2d 982 (1998)).

According to Lopez, the court's holding in that case that "the search incident to arrest exception . . . does not automatically extend to the 'private affairs' of persons who are not under arrest," *Parker*, 139 Wn.2d at 489, mandates the conclusion that the search of his car was conducted in violation of article I, section 7. Lopez contends that the police must presume that a car belongs to its driver and that this in turn requires the conclusion that Deputy Paz's search was unlawful due to *Parker*'s holding that the police may not perform a warrantless search incident to arrest of "personal possessions police know or should know belong to . . . nonarrested individuals." *Parker*, 139 Wn.2d at 489. In sum, Lopez contends that law enforcement officers may not search a car incident to the arrest of one of its passengers—as opposed to the arrest of its driver—in the absence of some independent probable cause to believe that the driver has committed a criminal offense. We disagree.

¶11 It is well established that article I, section 7 provides greater protection of the privacy interest in a vehicle and its contents than does the Fourth Amendment. *Parker*, 139 Wn.2d at 493-95. As therein stated:

> [W]e reiterate that "[a]ny analysis of article I, section 7 in Washington begins with the proposition that warrantless searches are unreasonable per se." *State v. White*, 135 Wn.2d 761, 769, 958 P.2d 982 (1998). This is a strict rule. *White*, 135 Wn.2d at 769. Exceptions to the warrant requirement are limited and narrowly drawn. *White*, 135 Wn.2d at 769. The State, therefore, bears a heavy burden to prove the warrantless searches at issue fall within the exception it argues for.

*Parker*, 139 Wn.2d at 496 (second alteration in original) (citations omitted). The search of a vehicle incident to the lawful custodial arrest of one of the vehicle's occupants falls within the narrow and carefully drawn exceptions to article I, section 7's warrant requirement. *Parker*, 139 Wn.2d at 496.

¶12 The simple fact that the lawful arrest of a vehicle's occupant has occurred, however, does not give the police "the authority to conduct a full blown evidentiary

search" of that vehicle. *Parker*, 139 Wn.2d at 499. Rather, the scope of a warrantless vehicle search incident to the arrest of one of the vehicle's occupants must conform to the constitutional limitations articulated by the Supreme Court:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

*State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986) (plurality opinion).

¶13 Warrantless vehicle searches are further circumscribed by *Parker*. In that opinion, the Supreme Court examined three consolidated cases. In each of these cases the police had made a lawful arrest of the driver of a vehicle and, in the course of performing a warrantless search incident to that arrest, also searched within items that they knew or should have known were the personal belongings of one of the vehicle's passengers. *Parker*, 139 Wn.2d at 489-92. The court held that the searches at issue were conducted in violation of article I, section 7 because they did not fall within the automobile exigency exception to the warrant requirement as that exception was articulated in *Stroud*.

¶14 However, no analytical approach constituted a majority decision of the court. The lead plurality opinion stated that *Stroud* did not allow police officers, pursuant to the arrest of a driver, to search items such as handbags or jackets that were contained in a vehicle and which the officer performing the search actually knew or should have known belonged not to the arrested driver but, rather, to a nonarrested passenger who posed no obvious threat to the safety of the officer. The plurality stated that such items were not simply "containers" within the meaning of *Stroud* but, rather, were the personal property of the nonarrested

passenger and were subject to article I, section 7's limitations on searches of persons. *Parker*, 139 Wn.2d at 496.[6]

¶15 A narrowly focused dissent generally agreed with the plurality's articulation of the applicable rule but concluded that the plurality had misapplied the rule in one of the cases in which the personal possession searched, a purse, had been within the span of control of the arrested individual immediately prior to that person's arrest. The dissent concluded that the permissible scope of a vehicle search incident to the lawful arrest of a vehicle occupant " 'includes a search of the immediately surrounding area or the area within the "immediate control" of the person arrested.' " *Parker*, 139 Wn.2d at 518 (Alexander, J., concurring in part, dissenting in part) (quoting *State v. Johnson*, 128 Wn.2d 431, 451, 909 P.2d 293 (1996)).

¶16 Subsequent cases have clarified that the rationale discussed in Justice Alexander's opinion is now the law. In *Jones*, a prosecution for illegal possession of a firearm, the defendant contended that the search by the police of a purse found in his car but clearly associated with another vehicle occupant violated article I, section 7. *Jones*, 146 Wn.2d at 330. A unanimous court reversed Jones's conviction, noting that there was no evidence that the purse was in Jones's immediate control prior to his arrest. *Jones*, 146 Wn.2d at 337-38. The court stated the applicable rule as being that the " 'personal effects of a passenger, such as a purse, jacket, or container, known to the officers to belong to the passenger, may not be searched incident to the arrest of the driver if not in the "immediate control" of the driver.' " *Jones*, 146 Wn.2d at 336 (quoting *State v. Vrieling*, 144 Wn.2d 489, 494 n.2, 28 P.3d 762 (2001)).

¶17 Thus, the relevant concerns in this case are (i) whether the searching officers either knew or clearly should have known that the item in which the contraband was discovered did not belong to the original arrestee and (ii)

---

[6] A fifth justice concurred that all three convictions should be reversed, but on different grounds. *See Parker*, 139 Wn.2d at 505-17 (Talmadge, J., concurring).

whether immediately prior to the arrest the item searched was within that arrestee's span of control. Whether the arrested person was the vehicle's driver or a passenger is not a dispositive consideration. *See Parker*, 139 Wn.2d at 501 ("There is simply no authority under our precedent to suggest that personal belongings clearly and closely associated with nonarrested *vehicle occupants* are subject to full blown police searches merely because some other *occupant of the vehicle* is arrested." (emphasis added)). Indeed, the Supreme Court has never addressed whether the rule articulated in *Stroud* must be applied differently depending on whether the arrested person is the driver of a vehicle or simply one of its passengers.

¶18 This court, however, has specifically examined that issue in two cases—*State v. Cass*, 62 Wn. App. 793, 816 P.2d 57 (1991), and *State v. Chelly*, 94 Wn. App. 254, 970 P.2d 376 (1999). In *Cass*, we addressed the then "novel question of whether a police officer may search a vehicle incident to the lawful arrest of a passenger, but not the driver, of the vehicle." *Cass*, 62 Wn. App. at 794. In that case, an officer stopped Cass's car after recognizing one of its passengers, who was the subject of three valid outstanding arrest warrants. The officer then performed a warrantless search of Cass's car, during which methamphetamine was discovered. Applying the rule articulated in *Stroud*, we held lawful the search of the vehicle in which the arrestee had been a passenger. We also held that article I, section 7 did not require the exclusion of the evidence discovered during the search in a later prosecution of the driver. *Cass*, 62 Wn. App. at 797. Similarly, in *Chelly*, we upheld a driver's conviction that resulted from the discovery of firearms and cocaine during a search of his vehicle incident to the arrest of a passenger. *Chelly*, 94 Wn. App. at 257, 262-63.

¶19 *Stroud* carefully refers to "vehicle occupants," rather than distinguishing between drivers and passengers. Neither *Parker* nor *Jones* applies the rule articulated in *Stroud* differently depending on whether the arrested person is the driver of or a passenger in a vehicle. Accordingly, we discern

no support in the law for Lopez's contention that vehicles in which passengers are arrested are the "personal effects" of the vehicles' drivers and are, therefore, not subject to the vehicle exigency exception to the warrant requirement.

¶20 Lopez's contention—that, because a vehicle subject to a traffic stop may be presumed to be the property of the driver, the vehicle is immune from the automobile exigency exception if the arrested party is a passenger rather than the driver—both misapprehends the rationale for the vehicle exigency exception and ignores *Cass* and *Chelly*. Police may search a vehicle incident to the lawful arrest of one of the vehicle's occupants both because traffic stops present a scenario in which a likelihood exists that relevant evidence may be destroyed and because traffic stops pose a well-demonstrated threat to officer safety. *See Parker*, 139 Wn.2d at 497, 502. These concerns exist regardless of whether the arrested individual is the driver or a passenger. *See Cass*, 62 Wn. App. at 797. We are unwilling to ignore the concerns underlying the vehicle exigency exception and expand upon *Parker* to characterize vehicles as the "personal effects" of their drivers such that they are not subject to search following a passenger's arrest. Further, were we to so extend *Parker*'s holding, we would be misapprehending the rationale of *Parker* itself, i.e., that a warrantless search of the personal effects belonging to a vehicle's occupant who has not been arrested is equivalent to a search of the nonarrested occupant's *person*, rather than equivalent to a search of the vehicle. *See Parker*, 139 Wn.2d at 501-02.

¶21 The rule articulated in *Parker* and *Jones* applies regardless of whether the arrested person is the driver or a passenger. Accordingly, we reiterate the rule announced by the Supreme Court and hold that personal possessions known by the police to belong to a specific vehicle occupant may not be searched incident to the arrest of another vehicle occupant unless the possessions were in the span of control of the arrested person immediately prior to the arrest. Applying this rule, we further hold that the search of

the CD container located in Lopez's car was performed in accordance with the requirements of article I, section 7.

¶22 In this case, no basis existed for any of the officers involved in the traffic stop to conclude that the CD container in which the ecstasy pills were found belonged to Lopez. To the contrary, testimony during the suppression hearing made clear that none of the vehicle's occupants at any time claimed ownership of the CD container.

¶23 Further, the evidence is unequivocal that the unlocked container in which the ecstasy was discovered was located on the backseat of Lopez's car next to Bello immediately prior to Bello's arrest and thus was in his immediate control. The evidence is equally unequivocal that Bello ducked out of sight in that same back seat as soon as the traffic stop was initiated by Deputy Triplett, giving rise to a concern that he may have been hiding weapons or destructible evidence.

¶24 The CD container was in Bello's immediate control prior to his arrest, and there was no reason for the police to believe that the container belonged to either Lopez or Rabang. The police thus acted with authority of law when they looked within the container incident to the lawful arrest of Bello.

¶25 Affirmed.

Appelwick, C.J., and Ellington, J., concur.

Review denied at 164 Wn.2d 1015 (2008).

