# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50084-1-II |
| Respondent, | |
| v. | |
| CINDY LOU CAULFIELD, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Cindy Lou Caulfield appeals her possession of a controlled substance—methamphetamine conviction. She argues the trial court erred in denying her motion to suppress evidence discovered after a police officer stopped her. Because the officer conducted a valid investigative stop, we affirm.

## FACTS[1]

Robert and Bridgett Foss owned a home located in a remote area. A private road provided access to their home. While out of town for the winter, the Fosses received notification that there were unauthorized vehicles at their home. Robert[2] returned home and realized his home had been burglarized. The next day he noticed unauthorized vehicles in his driveway. Robert called the police who arrested two men.

---

[1] The following facts are taken primarily from the trial court's CrR 3.6 findings of fact, which are, with the exception of finding of fact 2, unchallenged and verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[2] We use the Fosses' first names for clarity. We intend no disrespect.

Robert inventoried his home and shop. He noticed packs of fluorescent lightbulbs left in his shop and was surprised they did not get stolen. Robert then went to the store. Upon returning home, he noticed a yellow sports utility vehicle (SUV) parked on the private road leading to his house. Robert again called the police.

Clark County Sheriff's Deputy Jon Shields responded. He received information that the Fosses' home had been burglarized several times by different groups and individuals. When Shields neared the home, he noticed two women inside a yellow SUV who appeared to be leaving the remote road that led to the Fosses' home. Shields stopped the vehicle. As he approached it, Shields noticed it was "loaded with goods." Clerk's Papers (CP) at 36. "To investigate the possible burglary," Shields asked the driver, Caulfield, to step out of the vehicle. CP at 36. He handcuffed her and placed her in the back of his patrol car.

Robert arrived where Shields stopped the yellow SUV. Shields asked Robert to look inside the car to check if any of the items belonged to him. Robert identified the fluorescent lightbulbs inside the vehicle as his. Upon returning to the residence, Shields observed a broken door knob on the Fosses' shop door.

Shields asked Caulfield why she was out in the remote area. She said she had to urinate. Shields did not see any sign of urine on the ground. Shields arrested Caulfield. During the booking process, officers located a baggie of a crystalline substance in Caulfield's jacket that tested positive for methamphetamine.

The State charged Caulfield with burglary in the second degree and possession of a controlled substance—methamphetamine.[3]  Caulfield filed a motion to suppress "all of the evidence," arguing that the initial detention and subsequent arrest were "illegal" because the "seizure and arrest . . . [were] without probable cause."  CP at 25.

The trial court denied Caulfield's suppression motion and entered findings of fact and conclusions of law.  Relevant to this appeal, the trial court found:

> There was a traffic stop . . . and subsequent seizure when Clark County Sheriff's Office (CCSO) Deputy Shields detained the defendant, Cindy Lou Caulfield. The traffic stop and detention took place on Smith Quarry Rd, near the driveway to the Foss residence.

CP at 129 (FF 2).

Relevant to this appeal, the trial court concluded, "Based on the facts compiled by the investigating officer, he had the right to stop, detain, and question the driver . . . of the yellow car [that] Mr. Foss had identified."  CP at 132 (CL 9).  The trial court also concluded, "Deputy Shields conducted a justified investigatory stop based on information from Mr. Foss and from dispatch. Deputy Shields had a reasonable and articulable suspicion that Ms. Caulfield had been involved in criminal activity."  CP at 132 (CL 10).

Caulfield waived her right to a jury trial and proceeded to a stipulated facts bench trial.[4]  The trial court found her guilty of possession of a controlled substance—methamphetamine. Caulfield appeals.

---

[3] The trial court later dismissed the burglary charge.

[4] Caulfield notes in her opening brief that the trial court failed to enter written findings of fact and conclusions of law following the bench trial as required under CrR 6.1(d).  But, Caulfield does not assign error to this omission, and findings and conclusions are not necessary to review the issues raised.  We, therefore, do not address this issue further.

3

ANALYSIS

Caulfield contends the trial court erred when it failed to suppress evidence following an unconstitutional seizure. She contends Deputy Shields seized her without the reasonable suspicion required by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We disagree.[5]

I.      STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Unchallenged findings of fact are verities on appeal. *O'Neill*, 148 Wn.2d at 571. We review a trial court's legal conclusions de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014).

Caulfield challenges finding of fact 2, where the trial court found, "There was a traffic stop . . . and subsequent seizure when . . . Deputy Shields detained the defendant, Cindy Lou Caulfield. The traffic stop and detention took place on Smith Quarry Rd, near the driveway to the Foss residence." CP at 129 (FF 2). Substantial evidence supports this finding. To the extent it is a conclusion of law, we address it later in the opinion.

II.     INVESTIGATIVE STOP

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit a warrantless search and seizure unless the State demonstrates that one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d

---

[5] As a threshold matter, the State argues Caulfield waived her argument regarding whether the initial seizure was lawful by not raising it in her suppression motion. But Caulfield argued in her motion to suppress that the initial "detention" and subsequent arrest were illegal and the "seizure" and arrest were without probable cause. CP at 25. These arguments are sufficient to preserve the seizure issue currently raised on appeal.

242, 249, 207 P.3d 1266 (2009). Washington allows a "'few jealously and carefully drawn exceptions'" to the warrant requirement, which include *Terry* stops. *Garvin,* 166 Wn.2d at 249 (internal citation omitted) (quoting *State v. Duncan*, 146 Wn.2d 166, 171-72, 43 P.3d 513 (2002). The State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010).

"To conduct a valid *Terry* stop, an officer must have 'reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the stop.'" *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017) (quoting *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015)). We look to the totality of circumstances known to the officer in deciding whether an officer had a reasonable suspicion that criminal conduct has occurred or is about to occur. *Weyand*, 188 Wn.2d at 811. When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention. *Weyand*, 188 Wn.2d at 811. And "'[t]he courts have repeatedly encouraged law enforcement officers to investigate suspicious situations.'" *State v. Lee*, 147 Wn. App. 912, 918, 199 P.3d 445 (2008) (quoting *State v. Mercer*, 45 Wn. App. 769, 775, 727 P.2d 676 (1986)). "It is generally recognized that crime prevention and crime detection are legitimate purposes for investigative stops or detentions." *State v. Kennedy*, 107 Wn.2d 1, 5-6, 726 P.2d 445 (1986).

Here, the initial traffic stop was valid based on the totality of circumstances known to Shields. Shields was dispatched to the area based on a call from Robert that there was a yellow SUV parked on the private road leading to his house. Shields was notified that the Fosses' home had been burglarized several times by different groups and individuals. Caulfield appeared to be leaving the remote road that led to the Fosses' home with a car "loaded with goods" when the deputy arrived. Shields was concerned the individuals were involved in the burglaries of the

Fosses' home. These facts and the record provided Shields with a reasonable suspicion that criminal conduct had occurred or was about to occur. Thus, the initial stop was lawful.

Caulfield argues the detention was not a traffic stop, and therefore substantial evidence does not support finding of fact 2 because Shields exceeded the scope of a traffic stop by asking her to step out of the vehicle and placing her in his patrol car. But based on the facts, substantial evidence clearly supports the trial court's finding that there was a traffic stop. Whether the scope of the traffic stop was exceeded is a separate issue.

"During a lawful seizure—such as a traffic stop—officers have the authority to order suspects to produce identification, to step out of and away from their vehicles, and to perform other limited movements." *State v. Mecham*, 186 Wn.2d 128, 144, 380 P.3d 414 (2016). "'The scope of an investigatory stop . . . may be enlarged or prolonged . . . if the stop confirms or arouses further suspicions.'" *State v. Smith*, 115 Wn.2d 775, 785, 801 P.2d 975 (1990) (quoting *State v. Guzman-Cuellar*, 47 Wn. App. 326, 332, 734 P.2d 966 (1987)). Moreover, the scope of the traffic stop may be lawfully expanded if evidence of additional infractions or suspicious circumstances are observed after the stop. *State v. Chelly*, 94 Wn. App. 254, 260, 970 P.2d 376 (1999).

Here, as Shields approached the vehicle, he noticed it was "loaded with goods." CP at 36. This heightened Shields's suspicion that Caulfield was involved in a burglary of the Fosses' home. To investigate this suspicion, he handcuffed Caulfield and placed her in the back of this patrol car. Shields asked Robert to look inside the car to check if any of the items belonged to him. Robert identified the fluorescent lightbulbs inside the vehicle as his. Shields asked Caulfield why she was out in the remote area. She said she had to urinate, but there was no signs of urine on the ground. Shields arrested Caulfield and in a search incident to arrest, methamphetamine was located inside Caulfield's jacket.

Shields lawfully asked Caulfield to step out of her vehicle during the traffic stop. Shields's knowledge of recent burglaries at the Fosses' remote home, Caulfield being in the remote area that led to the Fosses' home, and the deputy's observation of goods inside Caulfield's vehicle all provided justification to enlarge the scope of Shields's investigatory stop. *Smith*, 115 Wn.2d at 801; *Chelly*, 94 Wn. App. at 260. Shields lawfully handcuffed Caulfield and placed her in the back of his patrol car while he investigated the matter. *See State v. Mitchell*, 80 Wn. App. 143, 145-46, 906 P.2d 1013 (1995) (under certain circumstances a *Terry* stop may include handcuffing and secluding a suspect). Accordingly, Shields did not unlawfully exceed the scope of the stop by handcuffing Caulfield and placing her inside his patrol vehicle while he investigated a possible burglary further.

## III.    CONCLUSION

The trial court's findings of fact support its conclusions of law that "the investigating officer . . . had the right to stop, detain, and question the driver . . . of the yellow car," "Deputy Shields conducted a justified investigatory stop based on information from Mr. Foss and from dispatch," and "Deputy Shields had a reasonable and articulable suspicion that Ms. Caulfield had been involved in criminal activity." CP at 132 (CL 9 & 10). We hold the initial seizure was lawful. Because the initial seizure was lawful, the evidence subsequently located inside Caulfield's jacket in a search incident to arrest was lawfully obtained. Therefore, the trial court properly denied Caulfield's CrR 3.6 motion to suppress.

## IV.    APPELLATE COSTS

Caulfield asks that we decline to impose appellate costs if the State prevails on appeal. The State has indicated that it will not seek appellate costs. We, therefore, do not impose costs.

7

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Lee, J.