# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72222-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAVELLE XAVIER MITCHELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  June 29, 2015 |

VERELLEN, A.C.J. — Lavelle Mitchell was convicted of one count of possession of a controlled substance.  On appeal, Mitchell challenges the finding that Officer Yagi "did not indicate compulsion through words or tone"[1] and the trial court's conclusion that Officer Yagi did not unlawfully seize Mitchell before his arrest.  We conclude sufficient evidence supports the trial court's finding.  In addition, the totality of the circumstances and undisputed findings support the trial court's conclusion that Mitchell was not unlawfully seized before his arrest.  We affirm.

## FACTS

While on patrol and in uniform one evening shortly after midnight, Officer Daniel Yagi saw Mitchell walking down a motel's exterior breezeway.  Officer Yagi drove past Mitchell and parked his car 10 to 20 feet from him in the motel parking lot.  Officer Yagi's patrol car did not block Mitchell's access to the adjoining street.

---

[1] Clerk's Papers (CP) at 79 (Finding of Fact (FF) 15).

Officer Yagi "asked" Mitchell "what was going on."[2] Mitchell responded that he was coming from his uncle's motel room. When Officer Yagi "asked" Mitchell his name, Mitchell responded "Darnell Brown."[3] Officer Yagi did not doubt or disbelieve Mitchell's response because "it was a very fluid contact."[4] Mitchell spoke to Officer Yagi "in a smooth manner."[5] Officer Yagi returned to his patrol car to run the name that Mitchell had given him. Officer Yagi did not tell Mitchell that "he was free to go or that he had to stay."[6]

When Officer Yagi ran "Darnell Brown" through his computer's database, he learned Brown had a prior felony conviction for possession of a controlled substance. Officer Yagi "asked" Mitchell "whether he was still using."[7] In a "very cordial, laid back" manner, Mitchell responded that "he was using."[8] Officer Yagi then asked if he "was holding."[9] Mitchell responded that "he had about 2 grams in the car."[10] Mitchell appeared "laid back and calm" and "didn't seem nervous at all" during the encounter.[11]

After Mitchell admitted that he was "holding," Officer Yagi read Mitchell his Miranda[12] rights. Mitchell signed a form consenting to a search of his car. Officer Yagi

---

[2] Report of Proceedings (RP) (June 5, 2014) at 8.

[3] Id. at 9.

[4] Id. at 23.

[5] CP at 77 (FF 6).

[6] RP (June 5, 2014) at 9.

[7] Id. at 11.

[8] Id.

[9] Id.

[10] Id.

[11] Id. at 11-12.

[12] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

searched Mitchell incident to arrest and found crack cocaine in Mitchell's coat pocket. Officer Yagi also searched Mitchell's car and found crack cocaine. Mitchell admitted the drugs belonged to him.

During this encounter, Officer Yagi "was unaccompanied by other officers," "never activated his emergency equipment," "never drew or displayed his weapon," "never physically touched Mitchell," "did not take possession of Mitchell's identification" before Mitchell admitted to "holding cocaine," and never told Mitchell that he had to stay.[13] The encounter lasted approximately five minutes. After the arrest, Officer Yagi told Mitchell to leave the area.

The trial court denied Mitchell's motion to suppress evidence obtained by Officer Yagi. After a stipulated facts trial, the court found Mitchell guilty of one count of possession of a controlled substance.

Mitchell appeals.

## ANALYSIS

### Finding of No Compulsion through Words or Tone

Mitchell contends insufficient evidence supports the trial court's finding that Officer Yagi "did not indicate compulsion through words or tone."[14] We disagree.

We review a trial court's challenged findings in a suppression hearing for substantial evidence.[15] "'Substantial evidence is evidence sufficient to convince a

---

[13] CP at 79 (FF 15).

[14] Id.

[15] State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

rational person of the truth of the finding.'"[16] "'[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'"[17] Unchallenged findings are verities on appeal.[18] We must defer to the fact finder's credibility determinations.[19]

The trial court found that Officer Yagi "did not indicate compulsion through words or tone."[20] Sufficient evidence in the record supports this finding.

Direct evidence supports the finding that Officer Yagi did not use adversarial or confrontational "words." Officer Yagi expressly testified to the "words" he used during the encounter with Mitchell. For example, when Officer Yagi arrived at the motel, he "asked" Mitchell "what's up, where you coming from."[21] He "asked" Mitchell "for his name."[22] Officer Yagi "didn't tell him that he was free to go or that he had to stay."[23] He "asked" Mitchell if "he was still using."[24] In a "very cordial, laid back" manner, Mitchell "said that he was using."[25] Then, Officer Yagi "asked" if Mitchell was "holding," and

---

[16] State v. Vickers, 148 Wn.2d 91, 116, 59 P.3d 58 (2002) (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).

[17] State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004) (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

[18] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[19] State v. Barnes, 158 Wn. App. 602, 609, 243 P.3d 165 (2010).

[20] CP at 79 (FF 15).

[21] RP (June 5, 2014) at 7.

[22] Id. at 8.

[23] Id. at 9.

[24] Id. at 10.

[25] Id. at 11.

Mitchell responded "yes."[26] No evidence suggests Officer Yagi gave orders, commands, or directions to Mitchell.

Additionally, sufficient evidence supports a reasonable inference that Officer Yagi did not use an adversarial or confrontational "tone." For example, Officer Yagi described himself as "a pretty smooth talker on the street."[27] He also testified that "it was a very fluid contact"[28] and "a fluid quick exchange."[29] Mitchell appeared "laid back and calm," "very cordial," and "just kind of matter of fact" during the encounter.[30] Mitchell spoke to Officer Yagi "in a smooth manner."[31] Further, Mitchell did not mention Officer Yagi's "tone" when testifying why he believed he had to cooperate with Officer Yagi.

Therefore, when viewed in a light most favorable to the State, sufficient evidence supports the trial court's finding that Officer Yagi "did not indicate compulsion through words or tone."[32]

## No Unlawful Seizure.

Mitchell contends he was unlawfully seized before his arrest. We disagree.

We review a trial court's conclusions following a suppression hearing de novo.[33] Although the determination of whether a seizure occurs is a mixed question of law and

---

[26] Id.

[27] Id.

[28] Id. at 23.

[29] Id. at 30.

[30] Id. at 11-12.

[31] CP at 77 (FF 6).

[32] Id. at 79 (FF 15).

[33] State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

fact, "'the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo.'"[34]

Under article 1, section 7 of our state constitution, a seizure occurs when "'considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority.'"[35] This is an objective standard based upon the police officer's actions and asks whether a reasonable person in the individual's position would "feel compelled to continue the contact."[36] If a reasonable person under the circumstances would not feel free to walk away, the encounter is not consensual.[37]

Not every contact that a police officer makes with individuals constitutes a seizure.[38] For example, a "social contact" is not a seizure.[39] A social contact is an interaction that "occupies an amorphous area in our jurisprudence, resting someplace between an officer's saying 'hello' to a stranger on the street and . . . an investigative detention."[40] Engaging a pedestrian in conversation in a public place does not, in itself,

---

[34] State v. Harrington, 167 Wn.2d 656, 662, 222 P.3d 92 (2009) (quoting State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997)).

[35] Id. at 663 (quoting State v. Rankin, 151 Wn.2d 689, 695, 92 P.3d 202 (2004)).

[36] State v. Bailey, 154 Wn. App. 295, 300, 224 P.3d 852 (2010).

[37] Harrington, 167 Wn.2d at 663.

[38] Rankin, 151 Wn.2d at 695; State v. Gantt, 163 Wn. App. 133, 139, 257 P.3d 682 (2011); State v. Mote, 129 Wn. App. 276, 282, 120 P.3d 596 (2005).

[39] Harrington, 167 Wn.2d at 664-65.

[40] Id. at 664.

raise the encounter to an investigatory detention requiring an articulable suspicion of wrongdoing.[41]

If an officer commands a person to halt or demands information from that person, a seizure occurs.[42] An unconstitutional seizure results in the suppression of all evidence flowing from the seizure.[43] "'But no seizure occurs where an officer approaches an individual in public and *requests* to talk to him or her, engages in conversation, or *requests* identification, so long as the person involved need not answer and may walk away.'"[44]

The Washington Supreme Court in State v. Young embraced a nonexclusive list of police actions likely resulting in seizure.[45] Circumstances that could indicate a seizure, even where the person did not attempt to leave, include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"[46] A seizure normally involves at least some of these factors, but the ultimate determination of whether a seizure occurs is based on the totality of the circumstances.[47]

---

[41] State v. Young, 135 Wn.2d 498, 511, 957 P.2d 681 (1998); State v. Ellwood, 52 Wn. App. 70, 73, 757 P.2d 547 (1988).

[42] O'Neill, 148 Wn.2d at 577.

[43] Harrington, 167 Wn.2d at 664.

[44] O'Neill, 148 Wn.2d at 577-78 (quoting State v. Cormier, 100 Wn. App. 457, 460-61, 997 P.2d 950 (2000)).

[45] 135 Wn.2d 498, 957 P.2d 681 (1998).

[46] Id. at 512 (quoting United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

[47] Mendenhall, 446 U.S. at 554-55.

We note that a trial court need not enter a finding regarding "words or tone." The Young factors, based on United States v. Mendenhall,[48] include "language or tone of voice." But the Young factors are not absolute. Rather, we consider the Young factors as part of the totality of the circumstances to determine if a seizure occurs. Even absent a finding about "words or tone," ample findings support the trial court's conclusion that Mitchell was not unlawfully seized before his arrest:

- Officer Yagi "was unaccompanied by other officers";[49]
- Officer Yagi "never drew or displayed his weapon";[50]
- Officer Yagi "never activated his emergency equipment";[51]
- Officer Yagi "never physically touched Mitchell" until after his arrest;[52]
- Officer Yagi "did not take possession of Mitchell's identification";[53]
- Officer Yagi never told Mitchell that he had to stay; and
- Officer Yagi did not block Mitchell's access to the adjoining public street.

And as previously noted, when asked on cross-examination why Mitchell believed he had to cooperate with Officer Yagi, none of his reasons involved Officer Yagi's words or tone of voice. No evidence suggests that Officer Yagi used adversarial words or a confrontational tone during the encounter. The undisputed findings for the other Young factors are consistent with no seizure. Therefore, the trial court properly concluded Mitchell was not unlawfully seized before his arrest.

Finally, in Mitchell's pro se statement of additional grounds, his arguments appear to relate to a plea agreement in an entirely unrelated case. Issues that involve

---

[48] 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

[49] CP at 79.

[50] Id.

[51] Id.

[52] Id.

[53] Id.

facts or evidence outside the record on appeal may not be raised through a statement of additional grounds, and the unrelated plea agreement has no bearing on Mitchell's conviction.[54] Therefore, Mitchell fails to identify any reversible error.

We affirm.

WE CONCUR:

---

[54] State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).